[No. 23061-1-I. Division One. August 27, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. ROBERT L. CAMPBELL, *Appellant.*

*Anna–Mari Sarkanen* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *James Cline, Deputy,* for respondent.

WINSOR, J.—Robert Campbell appeals a judgment and sentence for delivering a controlled substance in violation of the Uniform Controlled Substances Act, RCW 69.50-.401(a). We affirm.

On October 5, 1987, Campbell sold cocaine to H.W. Gordon, a King County police officer working undercover for the Drug Enforcement Unit. The sale was accomplished through an intermediary: Campbell placed the cocaine on a car seat, where at his direction a third person, B., picked it up and handed it to Officer Gordon.

Campbell was charged with violating RCW 69.50.401(a) by "deliver[ing] to H.W. Gordon, a certain controlled substance, and a narcotic drug, to–wit: cocaine". He was tried before a jury, which was instructed that to convict Campbell, it must find beyond a reasonable doubt that "the defendant delivered a controlled substance". The jury was also instructed that "[d]eliver means the transfer of a controlled substance from one person to another." The jury found Campbell guilty as charged.

The issue presented is whether evidence that Campbell transferred cocaine to B., who then transferred the cocaine to Officer Gordon, was sufficient to prove that Campbell committed a delivery under the law of this case. We hold that it is.

A delivery within the meaning of RCW 69.50.401(a) can be accomplished by "the actual, constructive, or attempted transfer" of a controlled substance "from one person to another". RCW 69.50.101(f). A constructive transfer is "the transfer of a controlled substance either belonging to the defendant or under his direct or indirect control, by some other person or manner at the instance or direction of the defendant." *Davila v. State*, 664 S.W.2d 722, 724 (Tex. Crim. App. 1984) (interpreting parallel provision of Texas code which, like RCW 69.50, is derived from the Uniform Controlled Substances Act); *accord, Reed v. State*, 733 S.W.2d 556, 558 (Tex. Ct. App. 1986). The evidence shows that Campbell directed a constructive transfer of cocaine; he therefore committed a delivery prohibited by RCW 69.50.401(a).[1] Thus, it is inarguable that Campbell

---

[1]Courts in other states which have enacted the Uniform Controlled Substances Act have reached the same result, namely, that delivery through an intermediary is a "constructive transfer", and thus is a delivery under the act. *E.g.*, *Laird v. State*, 483 N.E.2d 68 (Ind. 1985) (delivery made by giving controlled substance to another and instructing her to give it to a third person); *State v. Jochims*, 241 N.W.2d 25, 28 (Iowa 1976) (defendant made constructive delivery by giving amphetamines to accomplice, who turned them over to undercover agent; held that defendant need not make personal delivery to be guilty under the statute); *State v. Howell*, 196 Neb. 832, 246 N.W.2d 479 (1976) (unlawful delivery

could have been convicted of a delivery by constructive transfer.

Campbell would have us hold, however, that his conviction must be reversed because the jury was not instructed on constructive transfer and he was not charged with delivery by constructive transfer.[2] We decline to do so.

■ The jury was instructed that a delivery is defined as a transfer from one person to another. Transfer was not defined for the jury, nor was its ordinary meaning limited by reference to any one of the particular modes of transfer specified in RCW 69.50.101(f). Consequently, determination of the meaning of the word transfer was left to the common understanding of the jury. *Cf. State v. Scott,* 110 Wn.2d 682, 691–92, 757 P.2d 492 (1988); *State v. Ng,* 110 Wn.2d 32, 44–45, 750 P.2d 632 (1988). Significantly, transfer is commonly understood as meaning "to cause to pass from one person or thing to another", *i.e.,* to make a constructive transfer; as well as "to carry or take from one person or place to another", *i.e.,* to make an actual transfer. *Webster's Third New International Dictionary* 2426–27 (1971).[3]

We hold that because the ordinary meaning of the word transfer includes constructive transfers such as Campbell's, the instructions given were sufficiently broad to encompass Campbell's acts. Accordingly, although the better practice would have been to instruct the jury on constructive transfer, the court's failure to do so, particularly absent a request by defendant, was not reversible error.

■ We are also unwilling to reverse on the ground that the information did not charge Campbell with delivery by

---

includes transfer accomplished through an accomplice, *i.e.,* a constructive delivery).

[2]Campbell also argues that he was only liable as an accomplice to B. We find no merit in this argument.

[3]The common understanding of a term may be determined by reference to a dictionary definition. *E.g., Brenner v. Leake,* 46 Wn. App. 852, 854–55, 732 P.2d 1031 (1987).

constructive transfer. If Campbell was confused by the information charging a nonspecific delivery, he could have moved for the State to specify in the information whether he was being charged with committing a delivery by actual or constructive transfer. He did not do so, therefore any problems relating to the specificity of the information are not subject to review. *State v. Holt,* 104 Wn.2d 315, 320–21, 704 P.2d 1189 (1985) (so long as information sets forth elements of the crime charged, information cannot be challenged on appeal unless defendant timely requested a bill of particulars).

The judgment and sentence are affirmed.

GROSSE, A.C.J., and FORREST, J., concur.