FILED
COURT OF APPEALS
DIVISION II

2013 SEP 10 AM 8: 40

STATE OF WASHINGTON
BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43339-7-II |
| Respondent, | |
| v. | |
| MANUEL MERINO, | UNPUBLISHED OPINION |
| Appellant. | |

PENOYAR, J. —Manuel Merino was convicted for two counts of unlawful delivery of a controlled substance, each with a school bus stop enhancement. Merino appeals only count 2, arguing that the State failed to provide sufficient evidence that he was an accomplice in the delivery. In his statement of additional grounds (SAG), Merino argues that his counsel was ineffective during his trial. Merino's arguments fail and we affirm his convictions.

## FACTS

Tacoma police suspected that Malcolm Hampton was selling drugs from a house located on South 7th Street. Based on this suspicion, Special Investigations Detective Al Schultz arranged for confidential police informant, Tamika Foley, to do a "cold knock"[1] on June 14, 2011. 1 Report of Proceedings (RP) at 34.

Foley testified that she was in the house for about an hour. When Hampton entered the house, Foley pretended that she knew him, but she could tell that he did not believe her. Hampton left the room and Merino came in. Both Hampton and Merino went outside the house briefly and then entered the room again. Hampton gave Foley the drugs, and she paid him.

---

[1] A "cold knock" is when police send a confidential police informant to a location to purchase narcotics under police surveillance.

Merino told her not to come to the house again without calling first and gave her a phone number to call in the future.

Police had Foley contact Merino after the cold knock to arrange a second drug buy on June 20 in the South 38th Street Safeway parking lot.[2] On this occasion, police videotaped the encounter between Merino and Foley. Schultz testified that he did not see the actual drug transaction. He did see Foley and Merino talking, but did not see money or drugs physically changing hands. After meeting with Merino, Foley gave officers a substance later identified as crack cocaine.

Police executed a search warrant for the South 7th Street house on June 23. They found small quantities of marijuana and some drug paraphernalia throughout the house. Police also found $1,055 on Merino's person.

The State charged Merino with two counts of unlawful delivery of a controlled substance, each with school bus stop enhancements. At the close of the State's case, Merino moved to dismiss for lack of sufficient evidence. The trial court denied his motion. The jury convicted Merino as charged, and the trial court sentenced him to 84 months of confinement. Merino appeals.

## ANALYSIS

I.    INSUFFICIENT EVIDENCE

Merino argues that there is insufficient evidence that he was an accomplice to unlawful delivery for the June 14 incident because there is no direct evidence that he was involved in the

---

[2] In his earlier testimony, Schultz claimed it was the Safeway between South 11th and South 12th, but later admitted he misspoke.

drug buy at the house or that he discussed drugs with Hampton.[3]  Because Hampton conferred with Merino before making the deal and Merino gave Foley his number for future deals, there is sufficient evidence that Merino aided in the drug deal between Hampton and Foley, and we affirm.

Evidence is legally sufficient to support a guilty verdict if any rational trier of fact, viewing the evidence in a light most favorable to the State, could find the elements of the charged crime beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).  All reasonable inferences from the evidence must be drawn in the State's favor and interpreted most strongly against the defendant. *State v. Hosier*, 157 Wn.2d 1, 8, 133 P.3d 936 (2006).  Circumstantial and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).  Credibility determinations are for the trier of fact and not subject to review. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

Under Washington's Uniform Controlled Substances Act, to find a person guilty of unlawful delivery of a controlled substance, the trier of fact must find that the defendant (1) delivered a controlled substance and (2) knew that the substance delivered was a controlled substance.  RCW 69.50.401; *State v. Hernandez*, 85 Wn. App. 672, 675, 935 P.2d 623 (1997). "Deliver" or "delivery" under Washington's Uniform Controlled Substances Act is "the actual or constructive transfer from one person to another of a substance, whether or not there is an agency relationship." RCW 69.50.101(f). Washington courts have interpreted "transfer" to mean "'to cause to pass from one person or thing to another,' . . . as well as 'to carry or take from one person . . . to another.'" *State v. Campbell*, 59 Wn. App. 61, 64, 795 P.2d 750 (1990) (quoting

---

[3] For reasons unclear from the record, the second count refers to the first buy.

3

WEBSTER'S THIRD NEW INT'L DICTIONARY 2426-27 (1971)); *State v. Martinez*, 123 Wn. App. 841, 846-47 99 P.3d 418 (2004).

The State requested that the trial court instruct the jury that Merino was an accomplice in the first drug buy on June 14. A person can be liable for the crime of another if that person is an accomplice to that crime. RCW 9A.08.020(2)(c). A person is an accomplice in the commission of a crime if, "(a) [w]ith knowledge that it will promote or facilitate the commission of a crime, he or she: (i) [s]olicits, commands, encourages, or requests such other person to commit it; or (ii) [a]ids or agrees to aid such other person in planning or committing it." RCW 9A.08.020(3).

Here, there is sufficient evidence to show that Merino intended to facilitate the drug deal. Foley bought the drugs from Hampton, but he initially did not respond to her request and did not make the sale until after returning to the room with Merino. After she received the drugs, Merino gave her a phone number to call and warned her not to come back to the house without calling first. From these facts and the evidence of a later sale by Merino, it was reasonable for the jury to infer that Merino was consulted on and approved the first sale and was setting the ground rules for further drug sales to Foley.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

In his SAG, Merino argues several actions by defense counsel that he believes prejudiced his defense. Because he fails to show that counsel's actions were deficient and affected the outcome of the trial, we hold that counsel was not ineffective.

Effective assistance of counsel is guaranteed under the federal and state constitutions. *See* U.S. CONST. amend VI; WASH. CONST. art. I § 22. In order to prove ineffective assistance of counsel, a defendant must show that counsel made errors serious enough as to make his performance non-functional and that this performance prejudiced the defense enough to deprive

the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "Even if a defendant shows that particular errors of counsel were unreasonable . . . the defendant must show that they actually had an adverse effect on the defense." *Strickland*, 466 U.S. at 693. Courts engage in a strong presumption that counsel's representation was effective. *State v. Brett*, 126 Wn.2d 136, 198, 892 P.2d 29 (1995). The burden is on the defendant to show ineffective assistance based on the trial record. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

Merino first contends that counsel failed to "aggressively argue" that the evidence against him was insufficient. SAG at 1. He argues that defense counsel did not explain to the jury exactly what delivery of a controlled substance was nor did counsel explain that the video did not show a hand-to-hand transfer. Merino's arguments fail for two reasons. First, the trial court correctly instructed the jury on delivery of a controlled substance; therefore, the outcome of the trial was not affected by counsel's failure to do so. Second, counsel *did* argue during closing argument that the video did not show a hand-to-hand transfer and that Schultz did not see a hand-to-hand transfer; accordingly his performance was not deficient.

Merino further argues that the jury selection process may have resulted in the selection of a biased juror who did not understand why the defendant would not take the stand. In order to assess this claim, we need to review the voir dire transcripts, which were not included in the record. The appellant has the burden of providing a sufficient record to review issues raised on appeal. *State v. Tracy*, 158 Wn.2d 683, 691, 147 P.3d 559 (2006). Because Merino has not provided us these transcripts, we cannot review his claim.

Finally, Merino argues that counsel was ineffective for failing to explain to the jury why Merino had large amounts of cash on him at his arrest and why he was meeting Foley in the

parking lot. He contends that both of these things were related to his job as house manager. But, counsel did explain to the jury during closing argument that the cash the police found on Merino was related to his duties as house manager. Further, there is no evidence that Foley was a resident of the house, so it was not deficient performance for counsel to fail to argue that Merino was meeting her for matters related to the house. Merino has failed to show that counsel's performance was deficient or that it affected the outcome of the trial.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Penoyar, J.

We concur:

Johanson, A.C.J.

Fearing, J.