FILED
COURT OF APPEALS
DIVISION II

2014 AUG 19 AM 9: 36

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43823-2-II |
| Respondent, | Consolidated Nos. 43826-7-II 43833-0-II |
| v. | 43836-4-II |
| STEPHANEY MALONE, | UNPUBLISHED OPINION |
| Appellant. | |

BJORGEN, A.C.J. — Stephaney Malone appeals her convictions for three counts of delivery of a controlled substance, two of which the jury found she committed within 1,000 feet of a school bus stop; involving a minor in a drug transaction; possession of a controlled substance with intent to distribute, also committed within 1,000 feet of a school bus stop; and leading organized crime. Malone contends that (1) insufficient evidence supported five of the six charges and the school bus stop sentence enhancements, (2) the trial court erred in applying the school bus stop enhancements because Malone could not receive these enhancements as an accomplice, (3) the trial court erred in imposing an exceptional sentence for a major violation of the Uniform Controlled Substances Act (Act)[1] because the statute authorizing the exceptional

---

[1] Chapter 69.50 RCW.

No. 43823-2-II
(Cons. w/ Nos.43826-7-II, 43833-0-II, 43836-4-II)

sentence is unconstitutionally vague, (4) the trial court erred in instructing the jury on the major

violation of the Act, and (5) her trial counsel rendered ineffective assistance at sentencing.

We affirm Malone's convictions and sentence enhancements except for the leading

organized crime conviction, which we reverse. We remand to the trial court to dismiss with

prejudice the charge of leading organized crime, to correct Malone's offender score, and to

resentence if required by the corrected offender score.

## FACTS

A confidential informant (CI) for the Longview Police Department gave officers

Malone's name as a suspected drug dealer, and they began to investigate. The officers arranged

for three controlled buys[2] using the CI during its investigation of Malone, the first of which

occurred on September 28, 2010. In a recorded call, the CI contacted Malone and told her he

wanted to purchase $100 of crack cocaine. Malone told the CI that he would need to contact her

son, Derrick Malone, and provided the CI with Derrick's contact number.[3] The CI failed to

connect with Derrick despite several attempts, and the CI eventually called Malone back.

Malone assured him that she would contact her son and eventually called the CI back, telling him

once again to call Derrick. The CI then phoned Derrick and arranged to buy the crack near

Longview's Wal-Mart Store. Officers brought the CI to the purchase location and observed him

---

[2] A controlled buy involves the purchase of narcotics arranged by police through the CI. Police search the CI before the buy to ensure he or she has no drugs, give the CI traceable money for the buy, send the CI out to make the purchase under surveillance, and then search the CI after the buy to recover any drugs the CI acquires.

[3] For clarity's sake we refer to the appellant as Malone, and we refer to her family members by their first name. We intend no disrespect.

get into a car. He emerged after "a fairly short period of time" and returned to his police handler with 1.6 grams of crack cocaine wrapped in a paper towel. CD Proceedings (CDP) at 31.

The second controlled buy involving Malone occurred on October 5, 2010. The CI placed another call to Malone seeking to buy $100 in crack cocaine. Malone informed him "that she was out and about and that she would meet him over by the [Dollar Tree, Inc.] in Longview." CDP at 36. The officers, however, forgot to give the CI the money he needed for the buy. The CI discovered this oversight after getting into the car containing Malone and her son, Carlos Vargas, and had to dash off to where a patrol car was hidden to obtain the money. He then returned to the car containing Carlos and Malone, completed the transaction, and once again returned to his handler to give him the 1.6 grams of crack cocaine he purchased.

The final controlled buy in the investigation of Malone occurred on October 28, 2010. Again, the CI called Malone and asked for $100 in crack cocaine. Malone told him that her son would bring the drugs to him at a park near her house. Officers observing Malone's house saw a male leave her house on a bike; the male rode to the park, met with the CI, and exchanged cash for a paper towel containing .39 grams of crack cocaine. Officers later identified the man on the bike as Frank Arce.

Based on the evidence obtained from the controlled buys, officers sought and obtained a warrant to search Malone's house. There, the officers found the car used to transport Malone to the October 5, 2010 buy and the bike Arce used to ride to the site of the October 28, 2010 buy. In the locked master bedroom police found a pile of documents linking Malone to the cell phone number used to arrange the crack purchases and a stash of cocaine in a shoe in the closet.

No. 43823-2-II
(Cons. w/ Nos.43826-7-II, 43833-0-II, 43836-4-II)

The State charged Malone by information with seven felonies: delivery of a controlled substance, involving a minor in a drug transaction, two counts of delivery of a controlled substance with school bus stop enhancements, possession of a controlled substance with intent to deliver with a school bus stop enhancement, possession of a controlled substance, and leading organized crime.[4] The State also noted its intent to seek an exceptional sentence for a major violation of the Act because Malone's offense "involved at least three separate transactions in which controlled substances were sold, transferred or possessed with intent to do so." Clerk's Papers (CP) at 14.

At trial, the State presented recordings of the CI's September 28, 2010 and October 5, 2010 calls to Malone and recordings of all three buys.[5] The CI testified about each of the transactions while officers testified about their surveillance during the buys and the search of Malone's house. The State also offered testimony from the Longview School District's transportation manager identifying bus stops near the sites of the October 5, 2010 and October 28, 2010 deliveries and Malone's house. In addition, Longview's geographic information systems (GIS) coordinator prepared maps admitted into evidence that showed that the delivery sites and Malone's home were well within the 1,000 foot buffer zones surrounding the bus stops.

---

[4] The State moved to dismiss the simple possession charge with prejudice during trial due to insufficient evidence. The trial court granted this motion.

[5] The recording of the October 28, 2010 call failed for unknown reasons, and the jury did not hear it.

4

Malone called a single witness in her defense, Arce. Arce testified that he had delivered the crack to the CI in the park on October 28, 2010 at the behest of a girl friend whose last name and address he could not remember, not on orders from Malone.

The jury returned guilty verdicts on all counts. The jury returned special verdicts finding that Malone had committed the two delivery offenses and the possession with intent to deliver offense within 1,000 feet of a school bus stop. The jury also returned a special verdict finding that Malone had committed a major violation of the Act because her offense involved at least three separate transactions in which controlled substances were sold, transferred, or possessed.

The trial court sentenced Malone to 85 months' incarceration on each of the delivery and the possession with intent to deliver charges, 60 months' incarceration on the involving a minor in a drug transaction charge, and 156 months' incarceration for the leading organized crime charge, with all these sentences running concurrently. At the same sentencing proceeding, the trial court also sentenced Malone under three other cause numbers in each of which she had pled guilty to a single count of delivery of crack cocaine. The trial court sentenced Malone to 60 months for each delivery offense Malone pled guilty to, with those sentences running concurrently with each other and consecutively to the sentences imposed for the jury trial convictions.

Malone timely appealed.

No. 43823-2-II
(Cons. w/ Nos.43826-7-II, 43833-0-II, 43836-4-II)

## ANALYSIS

### I. SUFFICIENCY OF THE EVIDENCE

Malone challenges the sufficiency of the evidence underlying two of her three convictions for delivery of a controlled substance, the conviction for involving a minor in a drug transaction, the possession of a controlled substance with intent to deliver conviction, the leading organized crime conviction, and the school bus stop sentence enhancements to the convictions for delivery of a controlled substance and possession of a controlled substance with intent to deliver. We hold that sufficient evidence supports each conviction and enhancement, except the conviction for leading organized crime.

We review the sufficiency of the evidence sustaining a criminal conviction by asking whether, after "'viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Vasquez*, 178 Wn.2d 1, 6, 309 P.3d 318 (2013) (quoting *State v. Bencivenga*, 137 Wn.2d 703, 706, 974 P.2d 832 (1999)). By challenging the sufficiency of the evidence, Malone "'admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom.'" *State v. Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010) (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). We accord the same weight to direct and circumstantial evidence during our review of the sufficiency of the State's evidence and either type of evidence may sustain a conviction. *Kintz*, 169 Wn.2d at 551.

6

A.     Count I: Delivery of a Controlled Substance on September 28, 2010

Malone first challenges the sufficiency of the evidence related to her conviction for delivering crack cocaine on September 28, 2010. Specifically, Malone contends that the State failed to show the elements of constructive delivery. We hold that it did.

A conviction for delivery of a controlled substance requires the State to prove that the defendant "(1) delivered a controlled substance and (2) knew that the delivered substance was controlled." *State v. Martinez*, 123 Wn. App. 841, 844, 846, 99 P.3d 418 (2004). Because Malone did not personally deliver the crack cocaine, the State needed to prove that she did so constructively, which required the State to prove that she delivered it "through an intermediary." *State v. Campbell*, 59 Wn. App. 61, 63 n.1, 795 P.2d 750 (1990). This required the State to prove (1) a third person (2) transferred crack cocaine belonging to Malone or under her control (3) at her "'instance or direction.'" *Campbell*, 59 Wn. App. at 63 (quoting *Davila v. State*, 664 S.W. 2d 722, 724 (Tex. Crim. App. 1984)).

Sufficient evidence in the record allowed the jury to find beyond a reasonable doubt that Malone constructively delivered the crack cocaine to the CI on September 28, 2010.[6] While

---

[6] The State argues that sufficient evidence supports Malone's conviction on this count because the trial court instructed the jury on accomplice liability and the prosecutor availed himself of that instruction during closing argument. If the jury could have convicted Malone as an accomplice, more than sufficient evidence would have supported the conviction given even Malone's characterization of her phone calls with the CI. However, while the trial court provided the definitional instruction on accomplice liability, the trial court did not instruct the jury that it could convict Malone as an accomplice for Derrick's criminal act. We distinguish between a trial court's instruction on the definition of an accomplice and its instruction that the jury may convict an accomplice for the offense. *State v. Spencer*, 111 Wn. App. 401, 411-12, 45 P.3d 209 (2002). Without an instruction on the jury's ability to convict an accomplice or a criminal charge filed on that basis, Malone's conviction on accomplice liability grounds would

7

Malone contends that no evidence in the record suggested that the cocaine Derrick delivered belonged to her or was otherwise under her control, or that Derrick acted under her instance and direction, the jury heard the recordings of the CI's calls with Malone that day. During the first, the CI asked Malone if *she* had "a hundred," meaning $100 in crack cocaine. CDP at 182. Malone responded in the affirmative. The CI then attempted to buy the crack cocaine, and Malone told him to call Derrick. The jury could reasonably conclude or infer from that interaction that the CI was arranging to buy Malone's crack cocaine, although delivered by Derrick rather than Malone. Further, in a later call with Malone, after the CI failed to connect with Derrick, Malone told the CI that she would tell Derrick to "answer [his] call" to set up the buy. Ex. 9. This evidence allowed the jury to reasonably conclude that Derrick acted under his mother's instance or direction when he answered the call and then brought the crack cocaine to the buy site.

B.      Count II: Involving a Minor in a Drug Transaction

Malone also contends that insufficient evidence supported her conviction for involving a minor in a drug transaction. We disagree.

---

have been constitutionally infirm and no amount of evidence could be sufficient to support it. *Spencer*, 111 Wn. App. at 411-12 (citing *State v. Davenport*, 100 Wn.2d 757, 764-65, 675 P.2d 1213 (1984)). However, because we presume that the jury follows the trial court's instruction, we must presume the jury did not convict on accomplice liability grounds since it was not told it could do so. *See State v. Swan*, 114 Wn.2d 613, 661-62, 790 P.2d 610 (1990). Malone did not, in any event, assign error to the decision to give the superfluous instruction on the definition of an accomplice or the prosecutor's closing argument, which asked the jury to convict for the September 28, 2010 delivery based on accomplice liability.

8

To convict Malone of involving a minor in a drug transaction, the State needed to prove that she (1) "compensate[d], threaten[ed], solicit[ed], or in any other manner involve[d]" (2) "a person under the age of eighteen" (3) "in a transaction unlawfully to manufacture, sell, or deliver a controlled substance." RCW 69.50.4015(1).

Malone contests only the State's proof that Derrick was under the age of 18. For support, Malone cites our opinion in *State v. Duran-Davila*, 77 Wn. App. 701, 892 P.2d 1125 (1995), where we reversed a similar conviction for insufficient evidence that the transaction involved a minor. The only admissible testimony in *Duran-Davila* concerning the age of the alleged minor was a detective's testimony that he had seen the girl at a juvenile court proceeding. *Duran-Davila*, 77 Wn. App. at 703-04. We held that testimony about seeing the alleged minor "at a remand hearing" in juvenile court "was insufficient to prove beyond a reasonable doubt that" the girl was under 18 at the time of the offense. *Duran-Davila*, 77 Wn. App. at 706.

The testimony the State presented against Malone was qualitatively different than that presented in *Duran-Davila*. As in *Duran-Davila*, the arresting officer here testified to seeing Derrick interact with the juvenile justice system by stating that he brought Derrick to the juvenile detention facility for intake. However, the arresting officer testified further that, had Derrick been over the age of 18, the juvenile detention facility would have refused intake and instead sent him to the county jail. This testimony reasonably ruled out the possibility that Derrick was over the age of 18. A rational trier of fact could have found the State proved that Derrick was younger than 18 beyond a reasonable doubt based on this testimony.

9

No. 43823-2-II
(Cons. w/ Nos.43826-7-II, 43833-0-II, 43836-4-II)

C.      Count IV: Delivery of a Controlled Substance on October 28, 2010

Malone next challenges the sufficiency of the evidence sustaining her conviction for delivering a controlled substance on October 28, 2010. As with her challenge to her conviction for count I, Malone contends that no evidence allowed the jury to conclude beyond a reasonable doubt that she constructively delivered the crack through Arce, citing to his testimony that he did not deliver the crack cocaine for her. Again, we disagree.

Both the CI and his handler testified that the CI initiated the October 28, 2010 buy with a call to Malone asking to purchase $100 in crack cocaine. The CI testified that Malone told him that her son would meet him in a nearby park to consummate the transaction. Officers watching Malone's residence watched Arce leave on a bike, and other officers watched him ride to the park and meet with the CI to exchange cash for drugs. The CI testified about meeting Arce in the park. While Arce testified that Malone played no role in the transaction, Malone accepts the truth of the State's testimony and the reasonable inferences drawn from it for purposes of her sufficiency challenge. Given that reality, Arce's testimony was irrelevant. The jury could reasonably conclude from the CI's call to Malone that the CI had arranged to purchase Malone's drugs and that she directed Arce to deliver them to him for her.[7]

---

[7] Malone also argues that the "grossly disproportionate amount" of crack cocaine Arce delivered suggests that the cocaine was not under her control. Br. of Appellant at 10. Arce may have indeed had control over the drug and helped himself to some of it when he delivered it. That does not, however, make the cocaine any less Malone's property. She owned the drug until Arce handed it to the CI, and the State may show constructive delivery when a third person delivers the drugs owned by a seller to a buyer. *Campbell*, 59 Wn. App. at 63.

10

D.    Count V: Possession of a Controlled Substance With Intent to Deliver

Malone also challenges the sufficiency of the evidence supporting her conviction for possession of a controlled substance with intent to deliver. She contends that, while the State showed possession, it did not offer any evidence of intent to distribute. We hold that the State presented sufficient evidence.

While a jury may permissibly infer that someone in possession of a controlled substance intended to traffic it, the jury could also permissibly infer that the person possessed the substance for his or her own personal use. *State v. Harris*, 14 Wn. App. 414, 418, 542 P.2d 122 (1975). The State must therefore present some other evidence, aside from mere possession of a small quantity of a controlled substance, in order to prove that a defendant possessed with intent to deliver. *State v. Brown*, 68 Wn. App. 480, 483, 843 P.2d 1098 (1993). Courts commonly find this additional factor where the defendant possessed quantities of a controlled substance beyond those expected for personal use, or where she possessed tools of the illicit drug trade. *Brown*, 68 Wn. App. at 484. Testimony about controlled buys can also provide the additional evidence necessary to allow the inference of intent to deliver beyond a reasonable doubt. *Brown*, 68 Wn. App. at 484; *see State v. Thomas*, 68 Wn. App. 268, 273, 843 P.2d 540 (1992) (police testimony about prior sales can provide evidence of the defendant's intent to distribute controlled substances seized).

The State presented no evidence that the volume of crack seized at Malone's house itself indicated an intent to distribute.[8] This, however, was not a case where "the officers observed no actions suggesting sales or delivery." *Brown*, 68 Wn. App. at 484. The officers, through their CI, arranged three controlled buys with Malone. The evidence of these transactions allowed the jury to infer that Malone possessed the cocaine in order to carry on her illicit trade. *Brown*, 68 Wn. App. at 484; *Thomas*, 68 Wn. App. at 273.

E.    Count VI: Leading Organized Crime

Malone also challenges the sufficiency of the evidence supporting her leading organized crime conviction. She contends that the State failed to show Arce and Carlos acted under her control or that she committed each act for financial gain. We agree that the State failed to introduce sufficient evidence that Malone "led" Carlos and do not reach Malone's other contentions related to this charge.

To convict Malone of leading organized crime, the State needed to prove that she (1) "intentionally organiz[ed], manag[ed], direct[ed], supervis[ed], or finance[d]" (2) "three or more persons" (3) "with the intent to engage in a pattern of criminal profiteering activity." RCW 9A.82.060(1)(a). Under former RCW 9A.82.010(4)(Q) (2008),[9] the delivery of a controlled substance constitutes criminal profiteering if committed for "financial gain."

---

[8] No testimony at trial disclosed the precise amount of crack cocaine police found in the shoe. However, the prosecutor stated in closing it was 5.6 grams, and Malone did not object that this was an inaccurate misrepresentation.

[9] Former RCW 9A.82.010 was revised in 2013, but this revision does not affect the subsection cited.

Malone contends that the State failed to prove beyond a reasonable doubt that she organized, managed, directed, or supervised Carlos. The State disagrees, citing two pieces of evidence it claims show that Malone did so. First, Carlos gave Malone a ride to the October 5, 2010 buy site. Second, at the buy the CI forgot the cash, ran to get it, found Carlos's car still there when he returned, and consummated the transaction with Carlos present. We hold this evidence is insufficient to show the necessary organization, supervision, direction, or management of Carlos by Malone.

The ride Carlos gave Malone cannot show that she managed, supervised, directed, or organized him, because the evidence shows that Carlos had already committed to giving Malone a ride to the Dollar Store before the CI called her. Malone told the CI this when he asked her to drive to a site that police were already observing and instead told him to meet her where Carlos was going. That Malone could not order Carlos to take her to the location proposed by the CI is inconsistent with her supervision, direction, management, or organization of Carlos.

Nor did the fact that Carlos waited at the site of the purchase while the CI fetched the traceable money indicate management, supervision, direction, or organization by Malone. The recording played for the jury indicated that the CI asked Carlos to wait while he went to get the cash. If Carlos waited as a favor to the CI, we cannot say that Malone organized, supervised, or directed him.

While we review sufficiency challenges in the light most favorable to the State, the State needed to introduce some evidence that Malone had some effect on Carlos's actions. The gravamen of a leading organized crime offense is leadership: the leader must influence the

13

behavior of those he or she leads. *E.g., State v. Strohm*, 75 Wn. App. 301, 305-07, 879 P.2d 962 (1994) (finding management, supervision, direction, or organization where the leader of a stolen car ring decided which vehicles his associates would steal, which thief would do the stealing, and provided the thieves the necessary tools). We hold that under these circumstances the State failed to provide sufficient evidence of Malone's leadership of Carlos. Therefore, we reverse Malone's conviction for leading organized crime and remand to the superior court to dismiss this conviction with prejudice. *State v. DeVries*, 149 Wn.2d 842, 853-54, 72 P.3d 748 (2003).

F.      Aggravating Factors to Counts III, IV, and V:  The School Bus Stop Enhancements

Malone also challenges the sufficiency of the evidence related to the school bus stop sentence enhancements. She contends that the State failed to prove beyond a reasonable doubt that she committed any offense within the 1,000-foot radius prescribed by RCW 69.50.435 because it did not identify the precise location of the bus stops, the transaction sites, and the house where police seized the cocaine. We disagree.

As with a conviction, the State bears the burden of proving the elements of a sentencing enhancement beyond a reasonable doubt. *State v. Hennessey*, 80 Wn. App. 190, 194, 907 P.2d 331 (1995). We review the evidence supporting a jury's finding of a sentence enhancement in the same manner we review the evidence sustaining a jury's finding of guilty on a criminal charge. We look to whether, viewed in the light most favorable to the State, a rational jury could find the facts needed to support the sentence enhancement beyond a reasonable doubt. *Hennessey*, 80 Wn. App. at 194. Where the State seeks to enhance a sentence for delivery of a controlled substance within 1,000 feet of a school bus stop under RCW 69.50.435(1)(c), the State

14

may not rely on a "guesstimat[e]" of the distance between the transaction and the bus stop to provide sufficient evidence for the jury to find the sentencing enhancement. *Hennessey*, 80 Wn. App. at 195.

A rational jury could find beyond a reasonable doubt that Malone committed the two delivery of a controlled substance offenses and the possession of a controlled substance with intent to deliver offense within 1,000 feet of a school bus stop. The State presented testimony from the Longview School District's transportation manager that identified designated bus stops near the three transaction sites. The State also presented testimony from the City of Longview's GIS coordinator that she took the bus stop locations given to her by the school district's transportation manager and fed that data into the city's geographic-related software to prepare a map of the 1,000-foot circular radii surrounding the bus stops. The resulting maps were admitted into evidence, and the GIS coordinator testified that these maps were accurate to within a few inches. An officer identified the locations of the controlled buys and the search of Malone's house on the maps, which were marked with stars. The stars are all well within the 1,000 foot radii. Further, the officer testified that the entirety of the park where the October 28 buy took place, the entirety of the block where the search of Malone's house took place, and the entirety of the parking lot where the October 5 buy took place were all within the identified radii. Sufficient evidence supports the jury's findings. *See Hennessey*, 80 Wn. App. 195 n.1.

## II. ACCOMPLICE LIABILITY AND THE SCHOOL BUS STOP ENHANCEMENTS

Malone also contends that the school bus stop enhancements were inapplicable to the October 5 and 28, 2010 deliveries because such enhancements cannot apply to accomplices,

citing Division One's opinion in *State v. Pineda-Pineda*, 154 Wn. App. 653, 226 P.3d 164 (2010). We disagree that *Pineda-Pineda* applies, and we affirm.

*Pineda-Pineda*, like this case, involved a CI who set up several controlled buys. 154 Wn. App. at 657-58. During the first buy, Pineda-Pineda himself exchanged cash for cocaine. *Pineda-Pineda*, 154 Wn. App. at 658. During the second two buys, Pineda-Pineda was not present, although the CI arranged the purchase with him. *Pineda-Pineda*, 154 Wn. App. at 658. As in this case, evidence presented at trial indicated that these buys occurred within 1,000 feet of a school bus stop. *Pineda-Pineda*, 154 Wn. App. at 658-59. A jury convicted Pineda-Pineda of several offenses, including two counts of delivery of a controlled substance within 1,000 feet of a school bus stop. *Pineda-Pineda*, 154 Wn. App. at 659. Pineda-Pineda appealed, claiming among other things, that the trial court erred in imposing an enhanced sentence for the second delivery offense because no law authorized enhanced sentences where the conviction resulted solely from accomplice liability. *Pineda-Pineda*, 154 Wn. App. at 660.

Division One noted that RCW 9A.08.020, the general accomplice liability statute, does not authorize sentence enhancements and that any authorization for an enhanced sentence based on accomplice liability principles must come from the specific enhancement statute. *Pineda-Pineda*, 154 Wn. App. at 661. Division One held that because the school zone enhancement statute did not authorize its imposition through accomplice liability a person could not receive an enhanced sentence for delivery of a controlled substance within 1,000 feet of a school bus stop solely for the acts of others imposed through accomplice liability. *Pineda-Pineda*, 154 Wn. App. at 662-65. *Pineda-Pineda*, by its own terms, does not apply because the State did not charge

16

Malone as an accomplice in any crimes for which it sought school bus stop sentence enhancements.[10] 154 Wn. App. at 664.

As the State notes, Malone delivered crack cocaine to the CI during the October 5, 2010 buy. While Malone was not physically present at the October 28, 2010 buy site, the Act allows enhanced sentences for those who constructively transfer controlled substances within 1,000 feet of a bus stop. RCW 69.50.401 (proscribing delivery of a controlled substance within 1,000 feet of a bus stop); RCW 69.50.435(1) (delivery may be actual or constructive). As we have explained, Malone constructively delivered the controlled substances through her designated others, and the legislature approved of liability under these circumstances through RCW 69.50.401 and RCW 69.50.435(1). In each case, the State prosecuted Malone for her own actions in delivering or in directing others to deliver drugs to the CI. We affirm the trial court's imposition of the sentence enhancements for delivery and possession with intent to deliver within 1,000 feet of a school bus stop.

### III. VOID FOR VAGUENESS

Malone next argues that former RCW 9.94A.535(3)(e) (2010),[11] which allows enhanced sentences for major violations of the Act, is unconstitutionally vague. Sentence enhancements, however, are not subject to vagueness challenges.

---

[10] Here, in contrast, the State discussed accomplice culpability for Malone only in the context of the delivery charge for which it did not seek a school bus stop sentence enhancement. Accomplice liability is simply not relevant to the enhancements at issue here.

[11] Former RCW 9.94A.535(3)(e) has been revised, but the revision does not affect the subsection cited.

The due process vagueness doctrine requires that the legislature draft criminal statutes to provide notice as to what conduct they proscribe and to provide "ascertainable standards of guilt to protect against arbitrary arrest and prosecution." *State v. Baldwin*, 150 Wn.2d 448, 458, 78 P.3d 1005 (2003). This doctrine, though, applies "only to laws that 'attempt to proscribe or prescribe conduct.'" *Baldwin*, 150 Wn.2d 458 (quoting *State v. Jacobson*, 92 Wn. App. 958, 966, 965 P.2d 1140 (1998)). Applying the vagueness doctrine to sentence enhancements is thus "analytically unsound" because sentence enhancements only "provide directives for judges to consider when imposing sentences" for conduct proscribed elsewhere. *Jacobson*, 92 Wn. App. at 966. Our Supreme Court has approved of this analysis and held that exceptional sentences imposed under what is now former RCW 9.94A.535(3) are not susceptible to vagueness challenges, because the sentencing guidelines do not proscribe or prescribe behavior or render the defendant vulnerable to arbitrary arrest or prosecution.[12] *Baldwin*, 150 Wn.2d at 459. *Baldwin* requires that we reject Malone's vagueness challenge.

## IV. JURY INSTRUCTIONS

Malone next claims that the trial court erred in giving instruction 31, which informed the jury it should consider "[w]hether the current case involved at least three separate transactions in which controlled substances were sold, transferred, or possessed with intent to do so" to decide whether Malone committed a major violation of the Act. CP at 53. The relevant statutory provision uses "current offense" where the instruction used "current case," and Malone argues

---

[12] *Baldwin* discussed former RCW 9.94A.390(2)(d) (2001), which has since been recodified to RCW 9.94A.535(3)(d) without substantive change to the types of conduct that justify an exceptional sentence. Compare LAWS OF 2001, ch. 10, § 6.

that the substitution rendered the instruction erroneous. *Compare* RCW 9.94A.535(3)(e)(i) *with* CP at 53. We decline to address the merits of Malone's claim because she did not object at trial.

We generally do not consider issues raised for the first time on appeal. *State v. Strine*, 176 Wn.2d 742, 749, 293 P.3d 1177 (2013); RAP 2.5(a). CrR 6.15(c) reflects this policy; it requires a party to preserve a claim of error concerning a jury instruction by making a "timely and well stated objection[]" at trial. *State v. Grimes*, 165 Wn. App. 172, 179, 267 P.3d 454 (2011), *review denied*, 175 Wn.2d 1010 (2012). This serves the interests of judicial economy and fairness in trials. *Strine*, 176 Wn.2d at 749-50. We will, however, consider an issue for the first time on appeal if it involves a manifest constitutional error. *State v. O'Hara*, 167 Wn.2d 91, 98-100, 217 P.3d 756 (2009); RAP 2.5(a)(3).

To determine if the defendant claims a manifest constitutional error, we "'preview'" the merits of the defendant's claim to see if it would succeed. *State v. Kirwin*, 165 Wn.2d 818, 823, 203 P.3d 1044 (2009) (quoting *State v. Walsh*, 143 Wn.2d 1, 8, 17 P.3d 591 (2001)). The defendant bears the burden of showing "(1) the error is manifest, and (2) the error is truly of constitutional dimension." *O'Hara*, 167 Wn.2d at 98. Malone's claim involves no error, let alone a constitutional one.

Malone's claim that the substitution of the words "current case" for "current offense" created an error is simply incorrect. In the context of the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, "current offense" includes more than just the conduct at issue in a criminal charge; it includes all conduct "'related to the crime with which the defendant is charged.'" *State v. Sanchez*, 69 Wn. App. 195, 204, 848 P.2d 735 (quoting *State v. Houf*, 120 Wn.2d 327,

19

334, 841 P.2d 42 (1992)).[13] By the plain terms of the SRA, the jury must look to other instances of delivery or possession with intent to deliver to determine whether the defendant committed a major violation of the Act. Former RCW 9.94A.535(3)(e)(i); RCW 9.94A.530(3); *Sanchez*, 69 Wn. App. at 202-05; *see State v. Reynolds*, 80 Wn. App. 851, 853, 856-59, 12 P.2d 494 (1996). For sentencing enhancements for major violations of the Act, the terms "case" and "offense" are synonymous.

Further, even if we agreed that instruction 31was erroneous, it did not involve constitutional error. Malone claims the instruction violated her right to due process of law by lowering the State's burden of proof, but the instruction did not have that effect. The trial court properly instructed the jury on the appropriate burden for the aggravating factors, namely that the State bore the burden of proving the factors beyond a reasonable doubt. We presume the jury followed such instructions. *See State v. Swan*, 114 Wn.2d 613, 661-62, 790 P.2d 610 (1990). The instruction simply informed the jury what evidence the jury should consider to determine if the State had carried its burden of proof, and we fail to see how that instruction undermined the State's burden of proof.

Because Malone does not raise a manifest constitutional error, and because she failed to object at trial, she waived any claim of error. We decline to consider her claim further.

---

[13] *Sanchez* interpreted former RCW 9.94A.390(2)(d)(i) (1990), which the code reviser has since recodified as RCW 9.94A.535(3)(e)(i) without modification. LAWS OF 1990, ch. 3, § 603.

## V. Ineffective Assistance of Counsel

Finally, Malone contends her trial counsel rendered ineffective assistance by failing to object to the trial court's failure to consider (1) the leading organized crime charge as the same criminal conduct as the three delivery charges and (2) the September 28, 2010 delivery charge as the same criminal conduct as that involving a minor in a drug transaction charge. Because we reverse Malone's leading organized crime conviction, her first argument is moot, and we do not address it. *See State v. Rainey*, 107 Wn. App. 129, 134, 28 P.3d 10 (2001). We reject Malone's second argument on its merits.

The Washington and federal constitutions guarantee criminal defendants the right to effective representation by their counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). We review ineffective assistance claims by strongly presuming that the defendant's counsel performed "'reasonably.'" *Grier*, 171 Wn.2d at 33 (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)). Overcoming this presumption requires the defendant to show that her or his counsel performed deficiently and that this deficient performance prejudiced her or him. *Grier*, 171 Wn.2d at 32-33 (citing *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987)). Failure to object at sentencing to the trial court's counting convictions involving the same criminal conduct as separate offenses could constitute deficient performance. *See State v. Allen*, 150 Wn. App. 300, 316-17, 207 P.3d 483 (2009). Such, however, is not the case here.

Former RCW 9.94A.589(1)(a) (2002)[14] requires the trial court to count offenses encompassing the same criminal conduct as one offense for purposes of sentencing. This

---

[14] Former RCW 9.94A.589 was revised in 2014, but the revision does not adversely affect the subsection cited.

provision is, however, "'construed narrowly to disallow most claims that multiple offenses constitute the same criminal act,'" and Malone bears the burden of proving the offenses involved the same criminal conduct. *State v. Graciano*, 176 Wn.2d 531, 540, 295 P.3d 219 (2013) (quoting *State v. Porter*, 133 Wn.2d 177, 181, 942 P.2d 974 (1997)). To show that the offenses of delivery and involving a minor in a drug transaction involved the same criminal conduct, Malone must prove that they involved the same criminal intent and victim and were committed at the same place and time. Former RCW 9.94A.589(1)(a). Malone fails to make the requisite showing on at least two of these elements.

First, the delivery and involving a minor in drug transaction offenses involved different victims. Washington's courts view the general public as the victim of a delivery of a controlled substance offense. *Porter*, 133 Wn.2d at 181. As the State argues, RCW 69.50.4015, which proscribes involving a minor in a drug transaction, views the minor involved as the victim.

Second, the two offenses involve different criminal intent. As noted above, a delivery offense requires intent to deliver a controlled substance. *State v. Williams*, 135 Wn.2d 365, 368, 957 P.2d 216 (1998). RCW 69.50.4015 appears to require intent to involve the minor as well as intent to deliver a controlled substance. *See* RCW 69.50.4015 (proscribing "compensat[ing], threaten[ing], solicit[ing], or in any other manner involv[ing]" a minor in certain drug offenses).

Because the offenses of delivery and involving a minor in a drug transaction did not encompass the same criminal conduct, Malone's attorney had no basis for objecting and did not perform deficiently by failing to do so.

No. 43823-2-II
(Cons. w/ Nos.43826-7-II, 43833-0-II, 43836-4-II)

## CONCLUSION

We affirm Malone's convictions and sentence enhancements except for the leading organized crime conviction, which we reverse. We remand to the trial court to dismiss the charge of leading organized crime with prejudice, to correct Malone's offender score, and to resentence her if the corrected offender score so requires.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, A.C.J.

We concur:

HUNT, J.

LEE, J.

23