# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Personal Restraint of | No. 83795-8-I |
| HAYDEN CROSS BAUS, | DIVISION ONE |
| Petitioner. | UNPUBLISHED OPINION |

BIRK, J. — Hayden Baus filed this personal restraint petition (PRP) challenging a guilty finding that he violated prison regulation WAC 137-25-030(1) category A, violation 603 (Violation 603). The dispositive question is whether his taking an illicit, used syringe from his cell to a waste receptacle in a janitor's closet amounted to "transferring" drug paraphernalia. We uphold the violation and deny the petition.[1]

I

Department of Corrections (DOC) staff found Baus unresponsive in his cell after he had injected suboxone into his arm using a syringe. Baus reported he discarded the syringe in a trash can located in a janitor's closet next to his cell.[2]

---

[1] On June 6, 2023, the State filed a motion to dismiss Baus's petition as moot because Baus was released from custody on June 4, 2023. Baus filed a response and the State filed a reply. We deny the State's motion to dismiss.

[2] Other than describing its location in relation to Baus's cell, the record does not specify who had access to the janitor's closet and the trash can. The DOC contends a staff member or inmate tasked with emptying the trash "would have been exposed to a used syringe." Baus argues the syringe was put in the "staff garbage, not in a place where it would be accessed by or could cause harm to others."

When recovered, the syringe had a pen cap on it.  The syringe tested negative for controlled substances.

The DOC charged Baus with a "serious violation" of Violation 603, which prohibits "[i]ntroducing or transferring any unauthorized drug or drug paraphernalia."[3]  Baus admitted moving the syringe from his cell to the trash can in the janitor's closet.  The hearing officer found Baus guilty and imposed sanctions including loss of good conduct time.  Baus appealed the Violation 603 guilty finding and sanctions pursuant to an internal appeal process.  The infraction reviewer affirmed both.  Baus filed this PRP, seeking dismissal of his Violation 603 infraction.

II

A limited number of procedural safeguards must be afforded when a prison resident is subject to discipline for serious misconduct that may deprive the resident of a liberty interest.  In re Pers. Restraint of Reismiller, 101 Wn.2d 291, 294, 678 P.2d 323 (1984).  The statutory right to earned early release credit creates a limited liberty interest requiring minimal due process.  In re Pers. Restraint of Fogle, 128 Wn.2d 56, 65-66, 904 P.2d 722 (1995).  We will reverse a prison discipline decision only on a showing that it was so arbitrary and capricious as to deny the petitioner a fundamentally fair proceeding so as to work to the

---

[3] Baus does not challenge two additional violations with which he was charged: one, refusing to submit to urinalysis under WAC 137-25-030(1) category B – Level 2, violation 607, and two, causing injury by resisting orders, assisted movement, or physical efforts to restrain under WAC 137-25-030(1) category B – Level 3, violation 777.  The latter was charged because, while helping carry Baus's stretcher down a flight of stairs, an officer felt his knee "give out followed [by] a loud popping sound and then a sharp pain."

offender's prejudice. In re Pers. Restraint of Grantham, 168 Wn.2d 204, 215, 227 P.3d 285 (2010). An arbitrary and capricious action is a willful and unreasoning action, without consideration of and in disregard of facts and circumstances. Reismiller, 101 Wn.2d at 296. There must be at least some evidence to affirm prison discipline. Grantham, 168 Wn.2d at 216.

Interpretation of a statute is a question of law we review de novo. Ellensburg Cement Prods., Inc. v. Kittitas County, 179 Wn.2d 737, 743, 317 P.3d 1037 (2014). "The primary goal in statutory interpretation is to ascertain and give effect to the intent of the Legislature." Nat'l Elec. Contractors Ass'n, Cascade Chapter v. Riveland, 138 Wn.2d 9, 19, 978 P.2d 481 (1999). Statutory interpretation begins with the statute's plain language and ordinary meaning. Id. Undefined statutory terms must be given their usual and ordinary meaning, and the "court will not read into a statute matters which are not there nor modify a statute by construction." Dominick v. Christensen, 87 Wn.2d 25, 27, 548 P.2d 541 (1976). When the statutory term is undefined, the court may look to a dictionary for the statute's ordinary meaning. Filmore LLLP v. Unit Owners Ass'n of Ctr. Pointe Condo., 184 Wn.2d 170, 174, 355 P.3d 1128 (2015). "A term in a regulation should not be read in isolation but rather within the context of the regulatory and statutory scheme as a whole." City of Seattle v. Allison, 148 Wn.2d 75, 81, 59 P.3d 85 (2002). We apply the same principles of interpretation to administrative rules and regulations.[4] Id.

_____

[4] We conclude this matter is amenable to resolution based on the ordinary meaning of "transfer." As a result, our decision does not depend on deference due to an agency's interpretation of regulatory provisions within its expertise. See

Chapter 137-25 WAC does not define "transfer." See WAC 137-25-020. Baus argues "transfer" means to convey ownership or possession to another person.[5] Baus relies on cases focused on delivery. In State v. Campbell, the court upheld a conviction under a statute making it illegal for "any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance." 59 Wn. App. 61, 63-64, 795 P.2d 750 (1990); former RCW 69.50.401(a) (LAWS OF 1987 ch. 458, § 4). The defendant argued the jury should have been instructed on the meaning of constructively transferring drugs. Campbell, 59 Wn. App. at 64. The court instructed that "deliver" means the "transfer" of a controlled substance from one person to another. Id. "Transfer" was not defined and consequently, "determination of the meaning of the word transfer was left to the common understanding of the jury." Id.

In State v. Martinez, we reversed a conviction for unlawful "delivery" of a controlled substance. 123 Wn. App. 841, 847, 99 P.3d 418 (2004). The defendant had placed a plastic bag of cocaine in the proposed recipient's open hand, but did not release the bag, and the proposed recipient returned it. Id. at 843. We noted courts used dictionary definitions of "transfer" to determine that a buyer of drugs does not "transfer" and therefore "deliver," because the definitions "all contemplate that a person who transfers undertakes the active task of relinquishing control to

---

Cobra Roofing Serv., Inc. v. Dep't of Lab. & Indus., 122 Wn. App. 402, 409, 97 P.3d 17 (2004).

[5] Because transferring drug paraphernalia is a category A serious violation, Baus's disposal of the syringe falls within the same seriousness class as rioting, manufacturing explosives, hostage taking, escape, and homicide, among other things. See WAC 137-25-030.

another." Id. at 847. The defendant could not have completed a "delivery," because he did not relinquish possession to the proposed recipient. Id.

In Garrison v. Washington State Nursing Board, the court looked to criminal statutes to interpret the meaning of "distribute" after the state nursing board suspended a nurse's license. 87 Wn.2d 195, 195, 197, 550 P.2d 7 (1976). The nurse had removed drugs from the workplace to their home, but had not provided the drugs to any others. Id. at 196-97. The statute at issue did not define "distribute." See id. at 196. Taking guidance from criminal statutes prohibiting the unlawful distribution of drugs, the court held that because the nurse had not conveyed the drugs to any others, the nurse's "actions [did] not establish a distribution within the meaning of these statutes." Id. at 197.

But none of these cases turned on the ordinary meaning of "transfer." The DOC relies on *Webster's*, which defines "transfer" as "to carry or take from one person or place to another," "to move or send to a different location," or "to cause to pass from one person or thing to another." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2426-27 (2002). To the extent the DOC argues "transfer" means the infinitesimal translocation of an object from one place to another, we doubt its argument is consistent with the gravity of the regulation implied by its covering, in addition to Baus's putting the syringe in the trash, rioting, manufacturing explosives, hostage taking, escape, and homicide. But the DOC further contends that if the ordinary meaning of "transfer" in Violation 603 is defined consistent with discouraging and punishing the moving, hiding, and trafficking of contraband within prisons, then it covers Baus's conduct. We agree.

5

The legislature's intent for prison facilities is to "establish a comprehensive system of corrections for convicted law violators," and that system should be designed and managed to provide the maximum feasible safety for the persons and property of the general public, the staff, and the inmates. RCW 72.09.010(1). The State has a compelling interest in maintaining a safe prison for all. In re Pers. Restraint of Anderson, 112 Wn.2d 546, 551, 772 P.2d 510 (1989). Anderson considered a rule that made an inmate accountable for possessing a knife in a communal cell unless the inmate could prove their lack of involvement in the possession. The court said, the "penological interest in decreasing the number of assaults and in decreasing drug trafficking within the prison outweighs the petitioner's limited liberty interest in good time credits." Id.

As it applies to Baus's conduct, the DOC's interpretation of Violation 603 follows the ordinary meaning of "transfer" and is not contrary to the legislature's intent. The Anderson court acknowledged the serious risks posed by drug trafficking in prisons, which makes the DOC's application of the regulation in this case fit within the category A serious violations. At least two individuals, an inmate, Baus, and, presumably, a DOC janitor, had access to the janitor's closet where Baus discarded the syringe. The DOC legitimately promotes the safety of inmates and staff by preventing contact with drug paraphernalia. Baus's carrying the syringe from one place to another, his cell to the janitor's closet, fits within the ordinary meaning of the word "transfer" and within the core intent of Violation 603 to quell the clandestine movement of drug paraphernalia within the prison.

6

Because we conclude Baus's actions amounted to "transferring" drug paraphernalia, we need not decide whether they amounted to "introducing" them.

The petition is denied.

_____Birk, J._____

WE CONCUR:

_____Chung, J._____       _____Mann, J._____