[No. 17508-8-II.    Division Two.    December 20, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. JOSEPH ALLEN HENNESSEY, *Appellant*.

*Gregg E. Bradshaw* and *Walker, Bradshaw & Oaks, P.S.,* for appellant (appointed counsel for appeal).

*John W. Ladenburg, Prosecuting Attorney,* and *Mark Von Wahlde, Deputy,* for respondent.

HOUGHTON, J. — Joseph Allen Hennessey appeals from a conviction of delivery of a controlled substance and possession of a controlled substance with intent to deliver within a school zone. Hennessey claims the trial court erred in making certain evidentiary rulings. We affirm in part, reverse in part, and remand for resentencing.

## FACTS

The Tacoma Police Department engaged the services of an informant as part of an undercover drug operation. The informant arranged for undercover officer Dennis Quillio to buy two ounces of methamphetamine from Tracey Getz in May 1993. Quillio discovered that Getz gave him only one ounce in the transaction.

Shortly thereafter, the informant contacted Joseph

Hennessey about purchasing drugs. The informant then set up a meeting among Hennessey, Quillio, and himself. At the meeting, Quillio was to pay for the previously "fronted" ounce and to purchase another one-half ounce of the drug. Quillio withdrew $1,500 from the police narcotics fund for the transaction.

The meeting took place on June 1, 1993, at a canned food warehouse on Pacific Highway. Quillio wore a body wire to transmit the conversation to a recording device in another vehicle. The informant made the initial contact with Hennessey and then they returned to a vehicle in which Quillio was seated in order to carry out the transaction.

Quillio gave Hennessey $1,000 for the unpaid ounce. Quillio wanted to buy another one-half ounce, but Hennessey only had one-quarter ounce remaining. Hennessey said he could get another two ounces at a tavern. The three then drove to the tavern together.

Once at the tavern, Hennessey got out of the truck, went into the tavern and out the back door. The surveillance vehicle followed Hennessey and he was arrested. Hennessey was searched, and the police currency and a drug scale were recovered.

By way of a second amended information, Hennessey was charged with one count of unlawful delivery of a controlled substance and also unlawful possession of a controlled substance with intent to deliver within 1,000 feet of a school bus stop.

At the ensuing jury trial, Quillio testified that the drug transaction took place within 1,000 feet of two school bus stops. He "guesstimated" (his word) that one bus stop was within 600 feet of the sale and that the other was approximately 200-250 yards from the sale. He said he had not measured the distance, but that his "guesstimates" were based upon his experience as a former surveyor.

Quillio also utilized maps provided by the local school district. It is unclear from the record whether the stop Quillio approximately located was within 600 feet or 200-250 yards from the transaction.

Scott Gamus, a school district official, also testified about the location of the bus stops. However, no witness testified as to any actual measured distance between the drug purchase site and the bus stops, nor did any witness use the maps to delineate the distance.

The jury found Hennessey guilty of one count of unlawful delivery of a controlled substance and one count of unlawful possession of a controlled substance with intent to deliver. The jury also found, by a special verdict, that Hennessey met the requirements for a school zone enhancement — that the transaction took place within 1,000 feet of a school bus stop. The trial court sentenced Hennessey to 72 months. Hennessey appeals.

## ANALYSIS

Hennessey contends that there was insufficient evidence to support presenting to the jury a school zone special verdict. Hennessey asserts that the State was required to prove each element beyond a reasonable doubt and that it did not submit adequate evidence about the distance from the school bus stops to the site of the drug sale. *State v. Tongate*, 93 Wn.2d 751, 754, 613 P.2d 121 (1980). We agree.

RCW 69.50.435 states that a person selling drugs within 1,000 feet of

a school bus route stop designated by the school district . . . may be punished by a fine of up to twice the fine otherwise authorized . . . or by imprisonment of up to twice the imprisonment otherwise authorized by this chapter . . . .

(e) In a prosecution under this section, a map produced or reproduced by any municipal, school district, county . . . for the purpose of depicting the location and boundaries of the area on or within one thousand feet of . . . [a] school bus route stop . . . shall under proper authentication, be admissible and shall constitute prima facie evidence of the location and boundaries of those areas if the governing body of the municipality, school district . . . has adopted a resolution . . . approving the map as the official location and record of the location . . . .

The effect of the statute here is to add 24 months to Hennessey's sentence. RCW 9.94A.310(5).

■ ■ "Before a defendant can be subjected to an enhanced penalty, the State must prove beyond a reasonable doubt every essential element of the allegation which triggers the enhanced penalty." *State v. Lua*, 62 Wn. App. 34, 42, 813 P.2d 588, *review denied*, 117 Wn.2d 1025, 820 P.2d 510 (1991); *see also State v. Tongate*, 93 Wn.2d 751, 754, 613 P.2d 121 (1980). On appeal, the standard of review is whether a rational trier of fact taking the evidence in the light most favorable to the State could find, *beyond a reasonable doubt*, the facts needed to support the enhancement. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), *State v. Green*, 94 Wn.2d 216, 220-21, 616 P.2d 628 (1980).

■ This standard is not met here. The State produced two pieces of evidence and Quillio's lay opinion bearing on the distance from the bus stops to the transaction. According to the statute, the State may offer a map to show where the school bus stops are located. Nevertheless, there must still be sufficient evidence of the distance from the drug transaction to the school bus stop. Such evidence is lacking here.

The State showed that Quillio had personal knowledge of the location of the drug sale and the location of the two school bus stops. He then testified that one bus stop was within 600 feet of the sale and that the other was approximately 200-250 yards from the sale.

Gamus, supervisor of bus drivers and dispatch, also testified at trial. He produced the two maps used to indicate the location of the school bus stops in relation to the site of the drug sale.

After hearing the testimony of Quillio and Gamus, the trial court found that the State satisfied the prima facie elements of the violation and submitted the special verdict instruction to the jury.

The trial court was in error. The evidence is insufficient to support giving the school zone enhancement instruction to the jury. Although Quillio's lay opinion was admissible under ER 701, without more, it was insufficient for a trier of fact to find, *beyond a reasonable doubt*, that any of the relevant distances was less than 1,000 feet. Quillio himself said he was "guesstimating," albeit with experience as a surveyor. His "guesstimates" (600-750 feet) approached the upper limit (1,000 feet) needed to enhance.[1]

Moreover, our review of the maps admitted at trial discloses that only one contains a scale. According to that scale, the distances between the identified bus stops and the transaction were greater than 1,000 feet.

Furthermore, it would have been a simple matter for Quillio or another officer to measure the distance, rather than "guesstimating." This is especially true where the distance approaches the upper limit necessary for the enhancement.

The sentence enhancement is reversed and the matter is remanded for resentencing without the enhancement.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

SEINFELD, C.J., and MORGAN, J., concur.

---

[1] A different situation might well be presented if Quillio's "guesstimates" had been 10-20 feet, or even 50-100 feet.