IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 31132-5-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RICHARD L. PEARSON, | ) | PUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |

BROWN, J. — The State appeals the trial court's decision to vacate the jury's special finding that Richard L. Pearson delivered a controlled substance—hydrocodone within 1,000 feet of a school bus stop. The court reasoned a school official was required to validate the bus stops. Because the admission of a map overlay showing the bus stops violated confrontation principles, we agree with the trial court and affirm.

FACTS

On September 22, 2011, a confidential informant purchased hydrocodone (a prescription medication) from Mr. Pearson at his trailer located at 1309 North First Street in Yakima. The State charged Mr. Pearson with delivery of a controlled substance, hydrocodone. The State included a special allegation that the delivery occurred within 1,000 feet of a school bus stop.

Michael Martian, Yakima County's director of Geographic Information Systems (GIS) testified for the State. GIS maintains a digital legal map library for the county and all its departments. Mr. Martian testified that designated areas can be digitally imposed over an aerial photography map for the public record. One map maintained by GIS shows school bus stops and school properties created annually from information that is provided yearly from each county school district. During trial, the State inquired, "[G]etting back to the school bus stops, how are those maps created?" Mr. Martian answered, "The bus stop locations come from each school district. They're required to submit to the State before the school year where the bus stop locations are and they do that to the ESD Department, the Educational School District and they provide a latitude and longitude like a GPS coordinate for each bus stop and that's submitted to the State and we get that information from the State and we plot those points on the map." Report of Proceedings (RP) (May 24, 2012) at 219.

For Mr. Pearson's case, Mr. Martian created a map from its digital information using 1309 North First Street as the center point and depicting a 1,000 foot radius around that center point. The map was admitted at trial without objection.

When the time came for objections to jury instructions, defense counsel objected to the use of a special verdict form for the school bus stop enhancement on the basis that while Mr. Martian had laid a foundation for the map as a business record, he had never testified that any markings on the map within the 1,000 foot radius were bus stops. He told the court, "I thought that was really odd," but that "I was listening for it

2

and I double checked my notes and stuff but I don't remember him testifying to that effect." RP at 247. When the trial court commented that the objection it had been anticipating was to the fact that no one from the school district had testified, defense counsel stated, "I will raise that objection for what it's worth now, your honor." RP at 248.

Questioning the State further about the lack of a school district official to testify to the bus stop locations and the use of the bus stops on the alleged crime date, the court inquired, "You know it's so far reaching now that we're in the age of *Crawford* and right to confrontation, you know, they have really -- if it's being offered -- if a business record is being offered to establish essentially a fact, which it clearly is. I mean, . . . you gotta really look at that." RP (May 24, 2012) at 252. Nevertheless, the court gave a special verdict instruction.

The jury found Mr. Pearson guilty as charged, and found on the special verdict that he had delivered a controlled substance within 1,000 feet of a school bus stop. The court vacated the jury's special verdict, stating, "I'm not satisfied that the State has met their legal foundation on a lot of levels, quite bluntly. . . . [T]he State simply professes that they can put a map in that has school bus stops marked on it . . . . I think the State has to take the additional step [of having a school official testify about bus stop locations and use]." RP (July 27, 2012) at 3, 4. The court imposed a standard-range sentence. The State appealed.

3

ANALYSIS

The issue is whether the trial court erred in vacating the jury's special verdict finding that Mr. Pearson's offense occurred within 1,000 feet of a school bus stop.

When reviewing a trial court's ruling to vacate a special verdict based on lack of sufficient evidence, we review the court's order for an abuse of discretion. *State v. Park*, 88 Wn. App. 910, 914, 946 P.2d 1231 (1997). Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). The State must prove each element of the enhancement beyond a reasonable doubt. *State v. Hennessey*, 80 Wn. App. 190, 194, 907 P.2d 331 (1995). We review to see whether a rational trier of fact could have found the facts needed for the enhancement beyond a reasonable doubt, viewing the evidence in the light most favorable to the State. *Id.*

RCW 69.50.435(1)(c) provides a sentence enhancement for anyone who delivers a controlled substance "[w]ithin one thousand feet of a school bus route stop designated by the school district." To establish whether the offense occurred within 1,000 feet of a school bus stop, the State must provide "a map produced or reproduced by any municipality, school district, [or] county, . . . for the purpose of depicting the location and boundaries of the area . . . within one thousand feet of any property used for a . . . school bus route stop." RCW 69.50.435(5). This map "shall under proper authentication, be admissible and shall constitute prima facie evidence of the location

4

and boundaries of those areas" if the "municipality [or] school district . . . has adopted a resolution or ordinance approving the map." *Id.* There is no complying resolution or ordinance adopted by Yakima County; nevertheless, RCW 69.50.435(5), "shall not be construed as precluding the use or admissibility of any map or diagram other than the one which has been approved by the governing body of a municipality [or] school district . . . if the map or diagram is *otherwise admissible* under court rule." *Id.* (emphasis added).

Problematic here is that the map is not otherwise admissible. As the trial court correctly points out, the Confrontation Clause is implicated.

The United States Constitution's Sixth Amendment Confrontation Clause guarantees "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. This right "applies to 'witnesses' against the accused . . . , those who 'bear testimony.' 'Testimony,' in turn, is typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" *State v. Jasper*, 174 Wn.2d 96, 109, 271 P.3d 876 (2012) (quoting *Crawford v. Washington*, 541 U.S. 36, 51, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004)). "Testimonial" hearsay statements may not be introduced against a defendant at trial unless the proponent of the evidence shows (1) the declarant witness is unavailable and (2) the defendant had a prior opportunity to cross-examine the declarant witness. *Crawford*, 541 U.S. at 68; *State v. Lee*, 159 Wn. App. 795, 815, 247 P.3d 470 (2011), *review denied*, 177 Wn.2d 2012 (2013). If the hearsay statements are not "testimonial,"

5

however, they do not implicate the Confrontation Clause and no such showing is required. *Lee*, 159 Wn. App. at 815.

In *Crawford*, the United States Supreme Court did not give a comprehensive definition of "testimonial" but observed that the core class of "testimonial" statements include those "pretrial statements that declarants would reasonably expect to be used prosecutorily." 541 U.S. at 51. In other words, "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial" are testimonial. *Id.* at 52. More recent United States Supreme Court cases have also held that documents specifically prepared for use in a criminal proceeding fall within this core class of testimonial statements. *See Melendez–Diaz v. Massachusetts*, 557 U.S. 305, 310-11, 324, 129 S. Ct. 2527, 174 L. Ed. 2d 314 (2009) (holding three forensic "certificates of analysis" stating that a substance tested positive as cocaine were testimonial).

Here, Mr. Martian provided a digital map generated by the county with information supplied by a school district official. One of the purposes of the information is to ascertain whether RCW 69.50.435(1)(c) has been implicated. Thus, the county map is prepared for potential use in a criminal proceeding. This falls within the core class of testimonial statements. Therefore, Mr. Pearson had a right to confront the school district official. Since there is no showing the declarant witness was unavailable or Mr. Pearson had a prior opportunity to cross-examine the declarant witness, the map generated by information from a school district official was inadmissible. Without more,

No. 31132-5-III
*State v. Pearson*

sufficient evidence did not exist to support the jury's special verdict.  The trial court did

not abuse its discretion in vacating the jury's special verdict.

Sentencing affirmed.

Brown, J.

WE CONCUR:

Siddoway, C.J.                              Fearing, J.

7