# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49560-1-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| ZAKARY T. BAILEY, | |
| Appellant. | |

BJORGEN, J. — Zakary Bailey appeals from his conviction of unlawful possession of a controlled substance with intent to deliver, asserting that (1) the trial court erred by denying his CrR 8.3(b) motion to dismiss based on the State's failure to preserve evidence, (2) the trial court abused its discretion by permitting a late-disclosed witness to testify at trial, (3) defense counsel was ineffective for failing to interview the late-disclosed witness, and (4) the sentencing court erred by imposing a school bus stop sentence enhancement.[1] We affirm.

## FACTS

On July 1, 2016, Grays Harbor Sheriff's Deputy Carson Steiner saw Bailey walking from a driveway of a residence in Elma while carrying a backpack. Steiner contacted Bailey and arrested him on an outstanding warrant. Before searching Bailey, Steiner asked him if he had any sharp objects on his person that may poke or stick him. Bailey told Steiner that he had a

---

[1] Bailey also requests that we exercise our discretion to waive appellate fees in this matter. Because the State has indicated that it will not seek costs on appeal, we need not address Bailey's request.

loaded syringe in his pocket. Steiner retrieved the syringe, which contained a brown liquid that was later tested and confirmed to contain heroin.

After transporting Bailey to the jail, Steiner asked to search his backpack. Bailey said yes and gave Steiner a key to unlock a padlock on the backpack. Steiner asked Bailey if he would find contraband inside of the backpack; Bailey told Steiner that he would find a large amount of contraband. Inside the backpack, Steiner found a black box containing another loaded syringe, an empty syringe, a digital scale with white residue, rubber gloves, tinfoil strips, spoons, cotton, and baggies.

Bailey made the following statements while Steiner was searching his backpack: "Open it. You're going to be surprised how I treat my clients"; "I'm a businessman and I conduct business right"; and "I told you. I have to take good care of my [expletive]." Report of Proceedings (RP) at 117-18. Bailey was smiling and laughing while making these statements. Steiner noticed Bailey's demeanor change when he found a loaded syringe in the black box. Steiner stated that "the joy[ful]ness kind of left" Bailey, and Bailey asked another deputy to place him in a holding cell. RP at 118. Steiner emptied the brown liquid from the syringes into glass vials for testing and, according to department policy, placed all the syringes in a sharps container located in the evidence room; the syringes were subsequently destroyed.

The State charged Bailey with unlawful possession of a controlled substance with intent to deliver. At a hearing on the morning before trial, Bailey moved to dismiss his charge based on the destruction of the syringes found in his possession. Bailey argued that the syringes had exculpatory value because he had placed distinct markings on two of the syringes denoting that they were for his personal use. Bailey further argued that the photographs of the syringes taken

2

before their destruction were insufficient to present his defense because they did not show the markings. The trial court denied Bailey's motion to dismiss but prohibited the State and its witnesses from contradicting any testimony that Bailey had marked the syringes.

Bailey also moved to exclude witnesses based on the State's failure to provide the defense with a witness list. The trial court noted that the State had filed a trial brief that day stating its intent to call four witnesses: Deputy Carson Steiner, Detective Kevin Schrader, Elma School District Transportation Supervisor Tom Boling, and forensic scientist Deborah Price. Defense counsel stated that he did not recall discussing with the State Schrader's anticipated appearance as a witness at trial. The trial court stated that it would allow the witnesses to testify and offered defense counsel an opportunity to interview Schrader before he testified. Defense counsel declined to interview Schrader.

At trial, Steiner testified consistently with the facts stated above. Additionally, Steiner testified that he had measured the distance between where he arrested Bailey and two school bus stops in the area. Steiner measured the distance to the first school bus stop using a roller wheel, which showed a distance of 572 feet. Steiner also paced the distance to the first bus stop and, estimating that one stride equals three feet, determined the distance to be 585 feet. Steiner measured the distance to the second bus stop in the same manner. The measuring wheel showed a distance of 878 feet and Steiner paced the distance at 890 feet. The following exchange regarding the measuring wheel's accuracy took place during Steiner's cross-examination:

> [Defense counsel]: Okay. And you have not yourself checked for the accuracy of this clicker?
>
> [Steiner]: No.

| [Defense counsel]: | Okay. So it could say that you walked 15 feet and it could be off? |
|---|---|
| [Steiner]: | Well, I mean my pacing method versus the clicker is relatively close. They were within a few feet of each other after 500 feet. So I would say it's pretty accurate, but . . . |
| [Defense counsel]: | But you have not actually checked it— |
| [Steiner]: | No. I have not tested it, no. |

RP at 144.

Schrader testified that he had seen approximately five cases in which a person had sold narcotics in preloaded syringes. Schrader further testified that, in general, lower level drug dealers tended to be drug users. Schrader stated that he had never encountered a person "dealing in paraphernalia" and that there was a needle exchange in Grays Harbor where intravenous drug users could obtain clean needles. RP at 171.

Bailey testified in his defense. Bailey admitted to his personal drug use but denied that he sold drugs. Bailey testified that he takes people's used needles to the local needle exchange and then sells or gives away the clean needles. Bailey stated that he marked his syringes, including the loaded syringes found in his possession, with "XIV" to denote that they were for his personal use; he stated that he also marked his other personal property with "XIV." RP at 239, 248. Bailey testified that he was "joking around" and being a "smart alec" when making his statements to Steiner. RP at 236-37. Bailey said that his statements to Steiner about being a businessman and how he treats his clients were in reference to his needle exchange business.

Bailey's friend, Anthony Couch, testified that Bailey marked all of his personal property with "XIV." RP at 258-59, 261. Couch further testified that he knew Bailey ran a needle

4

exchange business and that, to his knowledge, Bailey was not "involved in any illegal money making hobbies." RP at 260-61.

The jury returned a verdict finding Bailey guilty of unlawful possession of a controlled substance with intent to deliver. The jury also returned a special verdict finding that Bailey committed the offense within 1,000 feet of a school bus stop. Before sentencing, Bailey renewed his motion to dismiss based on the destruction of the syringes, which motion the trial court denied. The trial court then imposed a standard range sentence that included a 24-month school bus stop sentence enhancement. Bailey appeals.

## ANALYSIS

### I. MOTION TO DISMISS

Bailey first contends that the trial court erred by failing to dismiss his charge based on governmental misconduct in destroying the syringes seized from him before trial. We disagree.

A.   CrR 8.3

CrR 8.3(b) provides:

> The court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial.

A defendant must make two showings to support the dismissal of charges under CrR 8.3(b). *State v. Wilson*, 149 Wn.2d 1, 19, 65 P.3d 657 (2003); *State v. Michielli*, 132 Wn.2d 229, 239, 937 P.2d 587 (1997). First, the defendant must show arbitrary action or governmental misconduct. *Michielli*, 132 Wn.2d at 239. Such governmental misconduct "'need not be of an evil or dishonest nature; simple mismanagement is sufficient.'" *Michielli*, 132 Wn.2d at 239-40 (emphasis omitted) (quoting *State v. Blackwell*, 120 Wn.2d 822, 831, 845 P.2d 1017 (1993)).

Second, a defendant must show that such governmental misconduct prejudiced his or her right to a fair trial. *Michielli*, 132 Wn.2d at 240. The mere possibility of prejudice resulting from governmental misconduct is not sufficient to meet the burden of showing actual prejudice. *State v. Norby*, 122 Wn.2d 258, 264, 858 P.2d 210 (1993). The alleged governmental misconduct must have "materially affected the defendant's right to a fair trial." *State v. Brooks*, 149 Wn. App. 373, 389, 203 P.3d 397 (2009).

"[D]ismissal under CrR 8.3 is an extraordinary remedy, one to which a trial court should turn only as a last resort." *Wilson*, 149 Wn.2d at 12. Dismissal of criminal charges should not be employed as a remedy for government mismanagement if "'intermediate remedial steps'" are adequate to protect the defendant's fair trial right. *Wilson*, 149 Wn.2d at 12 (quoting *State v. Koerber*, 85 Wn. App. 1, 4, 931 P.2d 904 (1996)).

We review a trial court's CrR 8.3(b) dismissal ruling for a manifest abuse of discretion. *Michielli*, 132 Wn.2d at 240. "'Discretion is abused when the trial court's decision is manifestly unreasonable, or is exercised on untenable grounds or for untenable reasons.'" *Michielli*, 132 Wn.2d 240 (quoting *Blackwell*, 120 Wn.2d at 830).

The trial court denied Bailey's motions to dismiss based on the State's destruction of the syringes at issue but employed the remedy of precluding the State's witnesses from denying that the syringes had been marked with "XIV." RP at 27-28. This remedy was adequate to preserve Bailey's fair trial right because the value of having the physical syringes preserved for trial would be to show the jury that the syringes had, in fact, been so marked. The trial court's ruling precluding the State from challenging defense witness testimony that the syringes had been marked thus adequately remedied Bailey's claim of prejudice flowing from the destruction of the

6

syringes. Accordingly, under the facts of this case and in light of the adequate "'intermediate remedial steps'" employed by the trial court, Bailey cannot show that the trial court abused its discretion by failing to employ the extraordinary remedy of dismissing his charges based on the destruction of the syringes. *Wilson*, 149 Wn.2d at 12 (quoting *Koerber*, 85 Wn. App. at 4).

B.     Due Process

Alternatively, Bailey contends that the destruction of the syringes constituted a due process violation. Again, we disagree.

To comply with due process, the State has a duty to preserve and disclose material exculpatory evidence to the defense. *Brady v. Maryland*, 373 U.S. 83, 87-88, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963); *California v. Trombetta*, 467 U.S. 479, 488-89, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984). However, the State does not have an unqualified duty to "retain and to preserve all material that might be of conceivable evidentiary significance." *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988).

In *State v. Wittenbarger*, 124 Wn.2d 467, 475-77, 880 P.2d 517 (1994), our Supreme Court adopted the *Youngblood* standard for determining whether the State's failure to preserve evidence violated a criminal defendant's due process rights. Under that standard, "[a] showing that the evidence might have exonerated the defendant is not enough," the evidence must be "'material[ly] exculpatory evidence.'" *Wittenbarger*, 124 Wn.2d at 475 (quoting *Trombetta*, 467 U.S. at 489. To be considered "'material[ly] exculpatory evidence,'" the evidence must (1) have "exculpatory value that was apparent before it was destroyed" and (2) "be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Wittenbarger*, 124 Wn.2d at 475 (citing *Trombetta*, 467 U.S. at 489). Due process is

7

not violated by the State's failure to preserve "'potentially useful'" evidence unless the defendant can prove bad faith by the State. *Wittenbarger*, 124 Wn.2d 477 (quoting *Youngblood*, 488 U.S. at 58).

Preservation of the syringes at issue would confirm only that Bailey had marked them with "XIV," an assertion that the trial court precluded the State from contradicting at trial. Because the trial court prohibited the State from contradicting Bailey's testimony that the syringes were marked in this manner, the syringes themselves were not materially exculpatory. Physical preservation of this evidence would not show that Bailey possessed the heroin contained in the syringes without an intent to distribute absent the jury finding credible Bailey's testimony that such markings denoted the syringes were for his personal use. Therefore, at best, the syringes were "potentially useful" evidence for the defense.

In addition, there is nothing in the record showing that the sheriff's department was aware of the marking before destroying the syringes, and the sheriff's department took photographs of the syringes prior to their destruction. Accordingly, even assuming that the syringes had exculpatory value, Bailey cannot demonstrate that such "exculpatory value . . . was apparent before [the syringes] were destroyed." *Wittenbarger*, 124 Wn.2d at 475.

Because the syringes at issue had, at best, potentially useful evidentiary value, Bailey must show that the sheriff's department acted in bad faith when destroying the syringes to demonstrate a due process violation. On this record, he cannot do so. Steiner testified that after he removed the suspected heroin from the syringes, he placed the syringes in a sharps container where they were subsequently destroyed. Steiner testified that he disposed of the syringes for safety reasons pursuant to sheriff's department policy, and there is nothing in the record

indicating that Steiner was aware of the marking on the syringes before he disposed of them.

Bailey's claim that the sheriff's department was improperly motivated in destroying the syringes

is speculative and without any support in the record. Accordingly, he fails to show the sheriff's

department had acted in bad faith, and his claim of a due process violation fails.

## II. LATE DISCLOSURE OF STATE'S WITNESS

Next, Bailey contends that the trial court abused its discretion by permitting Schrader to

testify after the State failed to disclose him as a witness until the day of trial. We disagree.

CrR 4.7 governs discovery obligations in criminal prosecutions and provides in relevant

part:

> (a) Prosecutor's Obligations.
>     (1) . . . [T]he prosecuting attorney shall disclose to the defendant the following material and information within the prosecuting attorney's possession or control no later than the omnibus hearing:
>     (i) the names and addresses of persons whom the prosecuting attorney intends to call as witnesses at the hearing or trial, together with any written or recorded statements and the substance of any oral statements of such witnesses.

The trial court may sanction a party for failure to comply with discovery obligations.

CrR 4.7(h)(7). The trial court may order "discovery of material and information not previously

disclosed, grant a continuance, dismiss the action or enter such other order as it deems just under

the circumstances." CrR 4.7(h)(7)(i). However, exclusion or suppression of evidence or

dismissal for a discovery violation is an extraordinary remedy that should be applied narrowly.

*State v. Vance*, 184 Wn. App. 902, 911, 339 P.3d 245 (2014).

We review a trial court's discovery decisions based on CrR 4.7 for an abuse of discretion.

*Vance*, 184 Wn. App. at 911. A trial court abuses its discretion when it bases its decision on

untenable grounds or for untenable reasons. *Vance*, 184 Wn. App. at 911.

Bailey cannot show that the trial court abused its discretion by failing to employ the extraordinary remedy of suppressing Schrader's testimony based on the State's discovery violation. The failure to identify witnesses in a timely manner is appropriately remedied by continuing trial to give the opposing party time to interview a new witness or to prepare to address new evidence. *State v. Hutchinson*, 135 Wn.2d 863, 881, 959 P.2d 1061 (1998). Here, defense did not request a continuance to acquire rebuttal evidence, and defense counsel declined the trial court's offer to interview Schrader before he testified.

Moreover, although the State did not properly disclose Schrader as a potential witness under CrR 4.7, he was named in the State's motion and declaration for an arrest warrant, which stated that Schrader "confirmed that Bailey was a known Elma-area drug dealer and that some dealers in fact sell their customers pre-loaded syringes such as the ones Bailey had." Clerk's Papers (CP) at 4-5. Accordingly, despite the State's noncompliance with CrR 4.7, Bailey was made aware well before trial of the potential for Schrader to be called as a witness and of the substance of his potential testimony. In light of defense counsel declining to interview Schrader, defense counsel not requesting a continuance to acquire rebuttal evidence, and the lack of surprise that Schrader was a potential State's witness, we cannot conclude that the trial court abused its discretion by declining to employ the extraordinary remedy of suppressing Schrader's testimony.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Next, Bailey contends that his defense counsel was ineffective for failing to interview Schrader prior to his testifying at trial. Again, we disagree.

To demonstrate ineffective assistance of counsel, Bailey must show both (1) that defense counsel's conduct was deficient and (2) that the deficient performance resulted in prejudice. *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). Performance is deficient if it falls below an objective standard of reasonableness. *In re Det. of Moore*, 167 Wn.2d 113, 122, 216 P.3d 1015 (2009). Counsel's conduct is not deficient if it can be characterized as legitimate trial strategy or tactics. *State v. Kyllo*, 166 Wn.2d 856, 863, 215 P.3d 177 (2009). Prejudice occurs where there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). We need "not address both prongs of the ineffective assistance test if the defendant's showing on one prong is insufficient." *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

Here, Bailey fails to identify any prejudice flowing from defense counsel's failure to interview Schrader prior to his testimony, stating only that "[t]rial counsel's failure to interview the [detective] left the State's theory that a dealer would sell preloaded syringes utterly unrefuted." Br. of Appellant at 32. However, defense counsel was made aware in the State's motion and declaration for an arrest warrant that Schrader had "confirmed . . . that some dealers in fact sell their customers pre-loaded syringes such as the ones Bailey had." CP at 4-5. Thus, defense counsel had ample time to prepare for Schrader's testimony regarding the sales of preloaded syringes, and Bailey does not explain how interviewing Schrader would have affected defense counsel's cross-examination of Schrader on that issue. Therefore, even assuming that defense counsel performed deficiently by failing to interview Schrader, Bailey cannot meet his

11

burden of demonstrating prejudice flowing from such deficient performance. Accordingly, his claim of ineffective assistance of counsel on this ground fails.

IV. SCHOOL BUS STOP SENTENCE ENHANCEMENT

A. Sufficiency of the Evidence

Next, Bailey contends that the State presented insufficient evidence to support the jury's special verdict finding that he committed his offense within a 1,000 feet of a school bus stop. We disagree.

"Before a defendant can be subjected to an enhanced penalty, the State must prove beyond a reasonable doubt every essential element of the allegation which triggers the enhanced penalty." *State v. Lua*, 62 Wn. App. 34, 42, 813 P.2d 588 (1991), *overruled on other grounds by State v. Coria*, 120 Wn.2d 156, 839 P.2d 890 (1992). In reviewing the sufficiency of evidence supporting a sentence enhancement, we determine "whether a rational trier of fact taking the evidence in the light most favorable to the State could find, beyond a reasonable doubt, the facts needed to support the enhancement." *State v. Hennessey*, 80 Wn. App. 190, 194, 907 P.2d 331 (1995) (emphasis omitted).

Steiner testified that he had used a roller wheel device to measure the distance between the location where he arrested Bailey and two nearby school bus stops. Using the roller wheel device, Steiner determined that the distance to the first school bus stop was 572 feet and that the distance to the second school bus stop was 878 feet. Steiner also paced the distance to the bus stops and, estimating that one stride equaled three feet, determined that the distance to the first school bus stop was 585 feet and the distance to the second bus stop was 890 feet. This was

12

sufficient evidence from which any rational trier of fact could find that Bailey committed his offense within 1,000 feet of a school bus stop. Accordingly, his sufficiency challenge fails.

B.      Authentication

Although framed as a sufficiency challenge, Bailey's contention appears to lie with the admissibility of evidence supporting the jury's special verdict that he committed his offense within 1,000 feet of a school bus stop. Specifically, Bailey argues that the results of the roller wheel measuring device were inadmissible under ER 901(a) because the State failed to show that the device was functioning properly and producing accurate results.

However, Bailey did not object to Steiner's testimony regarding the roller wheel measurements at trial. Generally, we do not consider an evidentiary error raised for the first time on appeal. *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007). "[T]he requirement of authentication is waived when the opponent fails to object on authentication grounds." *State v. Roberts*, 73 Wn. App. 141, 145, 867 P.2d 697 (1994). Trial counsel's failure to object to an alleged error "robs the court of the opportunity to correct the error and avoid a retrial." *State v. Powell*, 166 Wn.2d 73, 82, 206 P.3d 321 (2009). Bailey's authentication challenge to the admission of the roller wheel device's results does not allege a manifest constitutional error that we will consider for the first time on appeal. RAP 2.5(a); *State v. Newbern*, 95 Wn. App. 277, 288, 975 P.2d 1041 (1999). Accordingly, we decline to consider the alleged evidentiary error for the first time on appeal.

C.      Ineffective Assistance of Counsel

Finally, Bailey contends that his defense counsel was ineffective for failing to object to evidence concerning the roller wheel device's results. We disagree because, on this record,

13

Bailey cannot show that an objection based on lack of authentication would have probably been sustained and, thus, he cannot meet his burden of showing prejudice.

ER 901(a) provides, "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." In *State v. Bashaw*, our Supreme Court held that a showing that a distance measuring device is functioning properly and producing accurate results is a prerequisite to admission of the results under ER 901(a). 169 Wn.2d 133, 142, 234 P.3d 195 (2010), *overruled on other grounds by State v. Nunez*, 174 Wn.2d 707, 285 P.3d 21 (2012). Because in *Bashaw* the State presented no testimony or evidence suggesting that the measuring device's results were accurate, our Supreme Court held that the trial court abused its discretion by admitting the results over the defendant's ER 901 objection. *Bashaw*, 169 Wn.2d at 143.

Here, in contrast, Steiner provided testimony that he had paced the distance to the two school bus stops and that his pacing method produced results close to that of the roller wheel device. More importantly, in the absence of an ER 901 objection, the State was not required to present any additional evidence that the roller wheel's results were accurate. *Roberts*, 73 Wn. App. at 145. Although Steiner's testimony on cross-examination revealed that he had not personally tested the roller wheel for accuracy, there is no indication in the record that the State lacked proof that the roller wheel had been calibrated or otherwise tested for accuracy. Accordingly, even assuming that Steiner's testimony regarding his pacing to the school bus stops was inadequate to meet ER 901's authentication requirement, on the record before us Bailey cannot show that the State would have been unable to authenticate the roller wheel's results had

No. 49560-1-II

defense counsel raised an ER 901 objection. Accordingly, he fails to demonstrate prejudice in support of his ineffective assistance of counsel claim.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN

We concur:

JOHANSON, P.J.

SUTTON, J.

15