IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 36633-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JAIME MUNGUIA ALEJANDRE, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Jaime Alejandre appeals after a jury found him guilty of second degree murder and unlawful disposal of human remains. The jury also found by special verdict that Alejandre and the victim were "family or household members" for purposes of the domestic violence aggravator. Alejandre argues he is entitled to a new trial because of prosecutorial misconduct. He also argues the State presented insufficient evidence to prove the domestic violence aggravator.

We conclude the deputy prosecutor committed misconduct, but even if the misconduct involved constitutional error, it was harmless beyond a reasonable doubt. We also conclude the State sufficiently proved the domestic violence aggravator. We, therefore, affirm.

No. 36633-2-III
*State v. Alejandre*

FACTS

Jaime Alejandre and Maria Gonzalez Castillo[1] lived together with their eight children. On the evening of June 1, 2017, Alejandre was drunk. M.A.,[2] the couple's 17-year-old daughter, heard her parents arguing over money in their bedroom. She heard a big thud that sounded like a body falling. She ran to the closed bedroom door, asked what was going on, and asked for the door to be opened. Her father said not to open the door and that he was going to take a shower, even though the house had no running water. M.A. heard a little click in the bedroom closet, where her father kept his rifle.

When M.A. woke up the next morning, her five-year-old and one-year-old sisters were on the couch. Her older brother, Manuel, was home, but her other siblings had left for school. Manuel worked with his father at Carpenter Farms, and they typically drove together to work. That morning however, Alejandre was not home when Manuel woke up. Manuel called his father, but his father did not answer.

---

[1] We will refer to adult family members by their first names for brevity and clarity.

[2] To protect the privacy interests of the minor children, we identify them only through the use of initials. General Order of Division III, *In Re the Use of Initials or Pseudonyms for Child Victims or Child Witnesses* (Wash. Ct. App. June 18, 2012), http://www.courts.wa.gov/appellate_trial_courts/?fa=atc.genorders_orddisp&ordnumber=2012_001&div=III.

M.A. and Manuel looked for their mother but could not find her. M.A. saw her mother's purse in the laundry room and her shoes were on top of the laundry. M.A. looked in her parents' bedroom. It looked odd because the big blanket that usually was on the bed was gone, and the room looked very clean.

Manuel pulled up his parents' mattress and saw pools of blood underneath it. He and M.A. began to cry. M.A. drove her younger siblings to their babysitter's house. When she drove back home, she saw smoke coming from an area near her house. Manuel also saw something burning outside and smelled burning flesh. He asked M.A. to call the police.

M.A. walked with Manuel to the fire. They saw what appeared to be a body in the fire pit. Soon after, deputies from the Yakima County Sheriff's Office arrived. A deputy lifted human bones out of the pit. Later, dental x-rays of the skull confirmed the body belonged to Maria.

Deputies went to Carpenter Farms but could not find Alejandre. Because nobody knew where Alejandre was, M.A. called him. Alejandre answered, and M.A. created a ruse to get her father to drive home. Deputies stopped Alejandre's car before he arrived home and arrested him.

3

A forensic pathologist performed an autopsy and determined Maria had been killed by a blunt object, perhaps the butt of a rifle, fracturing her skull. The blood on the flipped mattress was Maria's. A blood trail showed that her body was taken from the bedroom, through an open bedroom window, and to the fire pit. Maria's blood was found on the butt of the rifle, found in the bedroom closet, and on the shirt Alejandre was wearing when he was arrested.

The State charged Alejandre with one count of second degree murder and one count of unlawful disposal of human remains. The State alleged the domestic violence aggravator for both offenses and an additional aggravator related only to the murder charge. Before trial, Alejandre made a motion in limine to exclude the State from introducing custodial statements made by him. The State noted Alejandre had not made any custodial statements.

During the State's case-in-chief, it called Sergeant Mike Russell and asked him about Alejandre's arrest. Sergeant Russell testified that another deputy read Alejandre his *Miranda*[3] warnings. The prosecutor then asked, "Did the defendant want to speak to you?" Report of Proceedings (RP) at 288. Alejandre immediately objected and the trial court sustained the objection. The State then moved on to other questions.

---

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

4

Once the jury was excused, Alejandre moved for a mistrial.  Alejandre argued the

State's question constituted an improper comment on him exercising his right to remain

silent.  The trial court denied the motion finding the statement did not

> elicit the testimony because of the objection and the ruling.  Had it gone
> further and had there been any testimony elicited, we would be in a
> different position than we are now.
>      I don't believe it's technically a comment on the right to remain
> silent.  It is an unfortunate question that was asked that certainly could have
> elicited unconstitutional testimony.

RP at 305.

The State completed its case-in-chief and Alejandre elected not to put on any

evidence.  The trial court instructed the jury.  One instruction directed the jury not to draw

any inferences from the lawyers' objections.  Another instruction defined household or

family members for purposes of the domestic violence aggravator.  That instruction

narrowly defined household or family member as "spouses."  Clerk's Papers (CP) at 117.

The jury found Alejandre guilty of second degree murder and unlawful disposal of

human remains.  By special verdicts, it also found the State had proved both aggravators

as charged.

At sentencing, Alejandre moved to strike the domestic violence special verdict that

applied to both offenses and argued the State had failed to prove Alejandre and Maria

were legally "spouses."  RP at 811-12.  He argued the State had not shown evidence the

two were ever formally or legally married.  The trial court denied the motion.  It

sentenced Alejandre to 220 months as a base sentence for second degree murder, 110

months consecutive for the aggravating circumstances, and 90 days concurrent for

unlawful disposal of human remains.

Alejandre timely appealed.

## ANALYSIS

PROSECUTORIAL MISCONDUCT

Alejandre contends the State committed reversible error when it asked Sergeant

Russell whether Alejandre wanted to speak to him after receiving his *Miranda* warnings.

To prevail on a claim of prosecutorial misconduct, a defendant must show that, in

the context of the record and all of the circumstances of trial, the prosecutor's conduct

was improper and prejudicial.  *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704,

286 P.3d 673 (2012) (citing *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43

(2011)).  If a defendant demonstrates the prosecutor's conduct was improper and the

defendant made a timely objection at trial, the appellate court must determine whether the

misconduct resulted in prejudice that had a substantial likelihood of affecting the verdict.

*State v. Sakellis*, 164 Wn. App. 170, 184, 269 P.3d 1029 (2011) (citing *State v. Anderson*,

153 Wn. App. 417, 427, 220 P.3d 1273 (2009)).  If such prejudice exists, the misconduct

deprives the defendant of his or her constitutional right to a fair trial and is reversible

error. *Glasmann*, 175 Wn.2d at 703-04 (citing *State v. Davenport*, 100 Wn.2d 757, 762,

675 P.2d 1213 (1984)).

The State first responds that Alejandre did not assert prosecutorial misconduct at

trial and we should refuse to review it. As explained below, we disagree.

Soon after Alejandre objected to the deputy prosecutor's question, the trial court

excused the jury. The following exchange took place:

> THE COURT: All right. Well, it's [the deputy prosecutor]
> that's being accused of misconduct. Go ahead, [defense counsel].
> [DEFENSE COUNSEL]: Your Honor, just very technically,
> we are not accusing anyone of misconduct at this stage. What I'm saying is
> the state impermissibly commented on my client's right to remain [silent].

RP at 299.

It is improper for a prosecutor to comment on a defendant's constitutional right to

remain silent. *State v. Lewis*, 130 Wn.2d 700, 706, 927 P.2d 235 (1996). Defense

counsel, by objecting and arguing that the deputy prosecutor impermissibly commented

on his client's right to remain silent, preserved the issue of prosecutorial misconduct

regardless of his comment to the contrary. We, therefore, will review the issue.

We readily agree with Alejandre that the deputy prosecutor's question was

improper. Both the Washington and the federal constitutions protect the right of an

accused to remain silent. *State v. Burke*, 163 Wn.2d 204, 206, 181 P.3d 1 (2008). The

State may not comment, through its argument or witnesses, on the defendant's choice to

exercise this right. *State v. Clark*, 143 Wn.2d 731, 764, 24 P.3d 1006 (2001). While a

mere reference to the defendant's silence is permissible, the State cannot invite the jury to

infer guilt from the defendant's silence. *Burke*, 163 Wn.2d at 206.

Here, Sergeant Russell testified Alejandre was advised of his *Miranda* warnings

after being arrested. The State then asked its witness whether Alejandre wanted to speak.

The State did this knowing Alejandre did not make any custodial statements. The mere

fact the Sergeant was not permitted to answer does not turn an impermissible question

into a proper one. We conclude the deputy prosecutor engaged in improper conduct by

asking the impermissible question.

The parties dispute whether the question constitutes a "comment" on the right to

remain silent or whether it constitutes a "mere reference" on the right to remain silent. If

a "comment," the question asked implicates constitutional error, and the State bears the

burden of proving it was harmless beyond a reasonable doubt. *State v. Easter*, 130 Wn.2d

228, 242, 922 P.2d 1285 (1996). If a "mere reference," the question asked does not

implicate constitutional error and is not reversible absent a showing of prejudice. *Burke*,

163 Wn.2d at 216.

8

We need not answer this question. Even were we to apply the more protective standard advocated by Alejandre, the deputy prosecutor's improper question was harmless beyond a reasonable doubt. The evidence against Alejandre, although circumstantial, was compelling. M.A. heard her parents arguing in their bedroom and then heard the sound of a body hitting the floor. She ran to the closed bedroom door, asked what happened, and to be let into the bedroom. Her father told her not to open the door because he was going to shower, despite there being no running water in the house. She then heard a light click from the bedroom closet which, in retrospect, may have been Alejandre placing his rifle back in the closet. The forensic evidence showed that someone used the butt of the rifle, which was in the bedroom closet, to crush Maria's skull and moved the body outside through the bedroom window and to the fire pit where it was burned. Alejandre was difficult to find the next morning. When he was found and arrested, he had his wife's blood on his shirt. Given this compelling evidence that Alejandre killed Maria with the butt of his rife and then burned his wife's dead body, we are convinced the deputy prosecutor's improper question was harmless beyond a reasonable doubt.

MOTION TO STRIKE SPECIAL VERDICT

Alejandre contends the trial court erred by denying his motion to strike the jury's

domestic violence aggravator finding.  He argues the State did not meet its burden in

showing he and Maria were "spouses."  We disagree.

A trial court's ruling to vacate a special verdict based on insufficient evidence is

reviewed for an abuse of discretion.  *State v. Pearson*, 180 Wn. App. 576, 580, 321 P.3d

1285 (2014).  A trial court abuses its discretion when it makes its decision on untenable

grounds or for untenable reasons.  *Id.*  The State has the burden of proving the elements

of the special verdict beyond a reasonable doubt, and we review whether, viewing the

facts in the light most favorable to the State, a rational trier of fact could have found the

State met this burden.  *Id.*

Here, the State alleged that the crimes of second degree murder and unlawful

disposal of human remains were aggravated domestic violence offenses.  To show this, it

was the State's burden to prove beyond a reasonable doubt that Alejandre and Maria were

"family or household members."  Former RCW 10.99.020(3) (2004).  The parties did not

object to the trial court's instruction that defined "family or household member" as

"spouses."

10

Jury instructions that are not objected to become the law of the case. *State v. Hickman*, 135 Wn.2d 97, 102, 954 P.2d 900 (1998). Challenges to the sufficiency of the evidence are evaluated according to the trial court's instructions to the jury. *Id.* at 102-03. The law of the case doctrine is broad and applies to "to convict" and definitional instructions. *State v. Calvin*, 176 Wn. App. 1, 21, 316 P.3d 496 (2013).

Former RCW 10.99.020(3) states that "family or household member" includes "spouses." But chapter 10.99 RCW does not define "spouses."

Where a specific term is not defined by statute, this court will give the term its plain and ordinary meaning ascertained from a standard dictionary. *State v. Watson*, 146 Wn.2d 947, 954, 51 P.3d 66 (2002). "Spouse" is defined as "a man or woman joined in wedlock **:** married person." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2208 (1993).

During trial, the State questioned a number of witnesses who identified Alejandre as Maria's husband, and Maria as Alejandre's wife. At least twice, defense counsel referred to Maria as Alejandre's wife. Viewing the record in the light most favorable to the State, a rational trier of fact could have found Alejandre and Maria were married to each other and were, therefore, "spouses."

No. 36633-2-III
*State v. Alejandre*

We conclude the trial court did not abuse its discretion by denying Alejandre's

motion to strike the jury's domestic violence aggravator finding.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____        _____
Pennell, C.J.                          Fearing, J.

12